SESSIONS *v.* ROMADKA and others.

*Circuit Court, E. D. Wisconsin.* July 26, 1884.

1. PATENT LAW—IMPROVEMENTS IN TRUNKS—TAYLOR'S INVENTION.
    Examination of Taylor's patent for improvement in trunks—alleged to have been infringed—and comparisons made with patents of others in the same line, and defendants adjudged to be infringers.
2. SAME — SEPARATE INVENTIONS UNCONNECTED CANNOT BE EMBRACED UNDER ONE PATENT.
    A patent is not valid which is for several distinct and separate inventions not connected in design or operation. The question whether the requisite.connection exists among such is often a perplexing one, however, and must be left largely within the discretion of the head of the patent office.
3. SAME—DISCLAIMER—TAYLOR PATENT.
    · It being extremely doubtful whether the Taylor patent is not obnoxious to the objection that it is for several distinct inventions a disclaimer of all claims in the patent, except that in controversy, duly filed in the patent office, is required as a condition to granting the relief prayed in the bill.
4. SAME—OMISSION OF STAMPED WORD "PATENTED."
    · When a patented article is so small that it is difficult to stamp upon it the word "patented," with the date of the patent, the requisite is answered by such a stamp or label being placed upon the packages in which the articles are shipped.

In Equity.

*Mitchell & Hungerford, B. F. Thurston,* and *Joshua Stark,* for complainant.

*Jenkins, Winkler & Smith* and *Geo. W. Hey,* for defendants.

DYER, J. On the ninth day of July, 1872, Charles Asa Taylor obtained letters patent No. 123,925, for an improvement in trunks. The specification states that the invention—

"Consists in a yielding roller of novel construction, to be applied entirely on the outside of the trunk; in spring catches to hold the trunk shut; in a brace of peculiar construction to be applied to the outside of the body, for the purpose of holding up the top or lid; and in a spring arm for supporting the tray when it is turned up."

·As descriptive of so much of the invention as relates to the spring catches, there is a further statement in the specification as follows:

"Instead of providing the top of the trunk with the usual straps for fastening it down, I attach to its front two spring catches, I, and to the top two tangs or plates, J, which lock into and are held by the catches. Each catch consists of a metal socket, *e*, provided with a hinged latch or hook, *f*, and with a flat spring, *g*, which bears against the lower end of the latch and keeps its upper end pressed inward against the socket. The upper end of the latch

or hook is provided with a prong, *i*, which extends through into the socket, as shown in figure 4, the upper side of the prong being beveled off as shown. The tangs on the top or lid are provided with beveled ends and with holes or openings as shown. When the top is pressed down the tangs slide down into the socket, and the prongs, *i*, of the latches lock through them, in the manner shown in figure 4, so as to hold the top or lid down securely. In order to unlock latches, it is only necessary to turn back the upper ends of the hooks or latches so as to draw the prongs out of the tangs. After the latches are turned back a certain distance, the springs hold them in position, as shown in figure I, and in dotted lines in figure 4, so that it is only necessary to attend to one of them at a time."

The patentee's claims are as follows:

"(1) The yielding roller for trunks, consisting of the socket having the flat spring mounted therein and provided with the roller in its end, when constructed and arranged as described, so that it may be applied entirely to the outside of a trunk, as set forth. (2) The offset slotted plate, L, applied to the outside of the body, in combination with the locking brace, N, pivoted to the top, and arranged to fold down inside of the plate, as described. (3) The spring catches, I, constructed and applied to the front of the body, as described, in combination with the tongues or hasps, J, on the top, when arranged to operate as set forth. (4) The spring arm, P, secured to the end of the body, in combination with the plate or catch, Q, on the tray, when arranged as described, for the purpose of holding the tray up."

The defendants are charged with infringing the third claim of this patent, and the present bill is filed by the complainant, as assignee of the patent, to restrain such infringement. Infringement is denied, and it is alleged, as a further defense, that the trunk latch described in the third claim was old and well known in public use before the patent to Taylor was issued; that it was described in letters patent issued to the following-named persons at the dates following, viz.: to E. A. G. Roulstone, dated October 30, 1866, No. 59,271; to Edward Semple, dated February 18, 1868, No. 74,723; to John C. Locke, dated March 21, 1871, No. 112,937; to C. N. Cutter, dated October 20, 1868, No. 83,137; to Louis Hillebrand, dated March 16, 1869, No. 87,931; to E. L. Gaylord, dated January 29, 1861, No. 31,233; to Louis Ransom, dated October 13, 1868, No. 82,988; to A. M. Olds, dated June 25, 1867, No. 66,103; and to Chandler Seaver, Jr., dated April 4, 1865, No. 47,135,—all of which letters patent are introduced as either anticipating the Taylor invention described in the third claim, or as showing the state of the art at the time of such invention.

If the complainant's patent is shown to be valid, then I think there can be little doubt that the defendants infringe the third claim. Evidently the term "spring catches," described in the specification and claim, refers to all of that part of the fastener which is secured to the body of the trunk. This part consists of three pieces, namely, a case provided with a metallic socket, a hinged latch hung in the socket, and a spring. The socket is formed by an opening in the top of the case. The latch is hung upon a horizontal axis in the case, and its upper end is provided with a part for a finger-piece which is

without the case, and with a beveled projection or hook, which, when the latch is closed, is within the case, and enters the space into which the tongue or hasp, J, referred to in the third claim, descends when the cover of the trunk is shut down. The latch and spring are so combined with each other that when the latch is in one position the spring will hold the hook of the latch in position for engagement with the tang, J, and, when the latch is thrown backward a certain distance, the same spring will hold it out of engagement. The other part of the fastener consists of a simple plate which is secured to the trunk cover, from which plate there projects downward a rigid tang, provided with an opening for the hook of the latch to enter. The lower end of this tang is beveled off on its side edges, so that when it engages with the mouth of the socket it will cause the cover to come down into proper position for engagement with the spring catch, and when down to act in connection with the socket as a dowel. This is substantially the description of the device given by the expert Shepard in his testimony, and I think it accurate.

In *Cowell* v. *Sessions*, 17 Fed. Rep. 452, Judge Shipman described the Taylor fastener as "a combination of dowel or keeper upon the trunk cover and socket upon the trunk box, which socket is provided with a hinged non-elastic latch or catch, which is pressed upon by a spring and snaps into firm engagment with the keeper, the hinged latch being acted upon by the spring to hold it either open or shut." This fastener is not a lock, but is designed as a substitute for leather straps, and for use in addition to the ordinary lock, to prevent strain upon the lock and to hold the cover securely, even if the trunk is not locked. It performs the function of a dowel to keep the cover from racking. In use, two of the fasteners are applied to the front of the trunk, one near each end, upon opposite sides of the trunk lock.

The defendants' trunk fastener, like the complainant's, consists of two parts,—one to be applied to the body of the trunk, and the other to the cover. That part which is fastened to the trunk body is composed of three pieces; namely, a case with a metallic socket open at the top for the reception of a tang, a latch hung on a horizontal axis, and a spring. The face of the case is covered by the metal of the case, the latch swings in the plane of the case, the latch-hook lies in the same plane with the latch and interlocks with a corresponding hook on the under side of the tang. A slot in the side of the case permits the latch to be moved to one side to allow the withdrawal of the tang. The tang is tapered to its point, and the spring is of wire secured to a pin in the case. Thus it appears that the defendants' device contains the same number of parts as those described in the Taylor patent. In both the combination is such as to operate substantially in the same way. There are certain differences in design and form. In the Romadka fastener the catch moves sidewise from one side of the case, instead of forward from the front of the case. It contains a bent wire spring instead of a flat one, and the adjustment

of the springs in the two devices is different. The tang in the defendant fastener has no opening for the latch-hook to enter, but, tapering to a point, there is a hook formed on the under side for engagement with the hook in that part of the case which is attached to the body of the trunk. I regard these variations from the construction of the Taylor fastener as mere mechanical changes or equivalents. The experts sworn on the part of the defendants testify that the two combinations are substantially the same.

It is contended that the third claim in the Taylor patent is not for the combination of a case, hinged latch, and double acting spring with a tang, but that, because of the language employed in the claim, the invention must be restricted to the precise structure described, and that there can be no infringement unless the construction specified is followed. But it seems to me that the two devices are not substantially different in the essential elements of organization. The Taylor invention consists of a combination. It is the combination of a dowel organization with a spring-latch system, the latch being so constructed that in use it may be thrown out of connection with the other parts of the device, and this combination is shown in the defendants' fastener. The construction which counsel ask the court to place upon the third claim is extremely narrow. It is not, I think, justified by the state of the art when the patent was granted. It is true that the claim contains the language, "constructed and applied to the front of the body, as described;" and the logic of the defendants' contention is that there can be no infringement unless the construction of the infringing device is exactly similar to that of the Taylor fastener. Such a construction of the claim would be too restricted, in view of the fact that the Taylor combination was new, and that his invention is evidently meritorious. If it seems plain that the defendants have embodied in their device the essential elements of organization contained in the Taylor fastener,—if they have appropriated the results of the inventor's thought, and made a fastener that exhibits in its construction the equivalents of the patented device,—then I think the defendants ought to be held infringers. Comparing the two devices, it seems clear that the differences in construction are but mechanical deviations that serve only to make manifest the appropriation by the defendants of the substance of the Taylor invention.

In the opinion of the court nothing is shown which anticipates the Taylor fastener, nor is such a state of the art proven as establishes a want of novelty in the device when the patent was granted. In *Cowell* v. *Sessions, supra,* the Semple and Locke patents were before Judge SHIPMAN, and I concur in what he says of them. I quote from his opinion:

"The Taylor invention was a trunk fastener, not a lock; but a fastener to keep the lid in place in case of accidents, and to take part of the strain which would otherwise come upon the lock. It is a combination of dowel or keeper

upon the trunk cover and socket upon the trunk box, which socket is provided with a hinged non-elastic latch or catch, which is pressed upon by a spring, and snaps into firm engagement with the keeper, the hinged latch being acted upon by the spring to hold it either open or shut. The Semple invention was not a trunk fastener. It was an angle plate upon the trunk cover, provided with a dowel in combination with an angle plate upon the trunk box, provided with a loop into which the dowel entered. The whole arrangement was for the purpose of stiffening the frame, making the upper corners durable, and preventing lateral motion of the cover. The Locke invention was a strap made of some metal which yields readily, and resting loosely in its cap, so as to have a slight degree of lateral play, and dovetailed at its lower end, which engages with a peculiarly constructed catch upon the body of the trunk. The lower end of the strap rides over the dovetailed lugs of the catch till the cover is closed, when the inclines of the straps and the lugs coincide. While this device is a fastener, it bears no substantial resemblance to the rigid keeper of the Taylor invention, which slides into a socket and engages with a non-elastic hinged latch, actuated by a spring to hold it either open or shut, the latch snapping into firm engagement with the keeper."

The Roulstone patent is for an improvement in traveling bags. It describes, among other things, a spring locking device for holding the two parts of the bag frame together, but this device is not provided with any means for holding the latch out of engagement when desired,—it does not exhibit the dowel in combination with the spring latch,—and I do not see how it could be applied to the front of a trunk body and lid; in its organization it is, as I understand it, wholly unlike the Taylor fastener.

The Cutter patent is for an improvement in locks for trunks, pianos, etc. The device is not intended for use as a catch or fastener like the Taylor invention, but is a lock to be opened by a detachable key. It does not contain a rigid tang, but a pivoted tang, and is not, in its construction, adapted for use on the front of the body of a trunk. At least, such is my reading of the patent and understanding of the device.

The Olds patent is for an improvement in spring hinges, and the Seaver patent is for an improved clothes fastener. Neither of these inventions, in design, construction, or adaptation to use, exhibit any similarity to the Taylor fastener.

The Gaylord patent is for a trunk lock. It is in two parts,—one to be fastened to the trunk cover, and the other to the trunk body. It has a rigid tang which is received into a socket, and as the tang is pressed into the socket it is self-locking. But it can only be unlocked with a key, and the socket is placed upon the front of the lock-plate. It has not a hinged latch for engagement with the tang, nor a latch provided with a finger-piece, nor one which, by the action of a spring, may be held in or out of engagement with the tang by changing its position. As before stated, the parts can only be disengaged by means of a key, and, while it shows some individual elements that are present in the Taylor and in the defendants' fasteners, as a combination it is radically unlike them. It belongs to the lock class, of

which several specimens are in evidence, and I do not regard them as anticipating the Taylor fastener, or as showing such a state of the art as deprives that device, in view of the use for which it is designed, and of its form of construction, of the merit of novelty.

The Ransom patent is for an improvement in trunk clasps, which are intended as substitutes for straps and buckles. The clasp consists of two parts,—one attached to the body of the trunk, the other to the lid. Each of the parts has a central longitudinal slot in which a tongue fits, these slots so coinciding as to form a continuous slot to receive the tongue when the lid is closed. The tongue is pivoted, and a spring presses against its lower end to keep it in position when shut down or when open, acting upon the principle of a spring in an ordinary pocket-knife. The tongue is provided with a thumb-catch to raise it for the purpose of opening the trunk. The principle upon which the tongue with its thumb-catch operates is quite like the hinged latch or hook in the Taylor fastener, but otherwise the two devices are wholly unlike, and the superior utility of the Taylor device is apparent. The Ransom invention is a trunk fastener, but it does not exhibit the elements of the Taylor combination. It does not have the rigid tang acting as a dowel, nor the socket with its catch to receive the tang. The part attached to the lid of the trunk, when the trunk is shut, rests directly upon the part attached to the body of the trunk, and the parts are then united by the insertion of the tongue in the slot, which extends centrally through the parts when thus joined. The socket and dowel features are not present in the device at all.

It was stated on the argument by counsel for the complainant that both the Gaylord and Ransom devices were held by Judge Nixon unavailing to defeat the Taylor patent, in the case of *Sessions* v. *Ballard*, heard and decided by him. I have been unable to verify the statement by any published report of that case, but I did not understand it to be controverted by counsel for the defendants.

The Hillebrand patent of 1869 is for an improvement in trunk locks. Upon a careful examination of the specifications and drawings of this patent I quite agree with the statements of the complainant's expert, that this device does not exhibit a combination of the dowel and spring-latch features of the Taylor fastener, nor the latch having a part accessible for operation from the exterior of the case, nor a lock which is adapted for use upon the front of a trunk body in connection with a rigid hasp or tang upon the trunk cover. If I correctly understand the specifications, they describe a lock adapted for use with a loose hasp, the staple of which enters an aperture in one of the broad sides of the case, with a projecting arm on one side of the lock-bolt which passes through the hasp. The lock is operated with a key. The claim of the patent is "a single spring so set that one of its ends bears solidly against a point of the bolt so as to throw the bolt backward and forward after being started by the key, substantially as and for the purpose set forth."

There is an exhibit in evidence in the case, marked "Exhibit Hillebrand," which is a sample of a metallic trunk fastener, and which bears the stamp "Pat'd Mar. 1869," the date of the Hillebrand patent just referred to. It is somewhat similar in form to the Taylor fastener, and in construction to the defendants' device. It cannot be accepted as a model of the Hillebrand lock, so radically different is it in construction from the lock described in the patent. And the proofs do not show that its construction or use antedates the Taylor patent.

Another patent, No. 120,067, dated October 17, 1871, and issued to Hillebrand and Wolf, was, by special leave of the court, introduced in evidence at the hearing. It is a patent for an improvement in trunk-lid guides, and the lock introduced in evidence before the examiner, labeled Exhibit 6, seems to conform in part to the construction described in the specifications of this patent. This lock is stamped "Pat'd Mar. '69 and Oct. '71;" so that it would seem to be a lock claimed to have been made under the two Hillebrand patents. The drawing and specifications in the patent of 1871 describe a hingeless hasp secured to the lid of the trunk and provided with a catch for engagement with the lock-bolt. A handle is formed in the body of the hasp by which the trunk-lid may be conveniently raised. Within the walls of the casing of the lock, at the upper side, are sockets for the entrance of lugs which are attached to the hasp, so that when the trunk is locked the lugs are inclosed within the lock-casing. These lugs are intended to relieve the catch of the hasp and the lock-bolt of side strain, and to distribute this strain over the lugs and sockets. The patentee's claim is a hingeless hasp provided with a handle and the sockets within the lock-casing in connection with the lugs of the hasp. Undoubtedly, the lock described in this patent and the lock marked Exhibit 6 contain members in combination which correspond in operation, if not in construction, with certain parts in the Taylor and Romadka fasteners, and probably they narrow the field of invention in that class of devices. But they belong in the category of trunk locks operated by means of a key, and not of trunk fasteners as a substitute for straps. As a whole, they exhibit a different combination from that of the Taylor fastener and the defendant's fastener, and they do not, I think, take from the Taylor device the quality of originality. Such a form of construction and such utility are shown in that device as, to the mind of the court, are highly suggestive of originality and merit; and while Exhibit 6, and the lock described in the Hillebrand and Wolf patent of 1871, approach more nearly the application of mechanical parts developed in the Taylor device than does any other patent or device shown in the case, still, I am of the opinion that the Taylor patent ought not to be held invalid because of inventions that preceded it which belong in the trunk-lock class.

Other devices older than the Taylor fastener are here shown, such as a rifle sight, door lock, window fastener, and purse catch, but they do not militate against the Taylor device, because they show only

that certain individual parts in the Taylor combination were old,— a fact entirely consistent with originality in the combination. *Bates* v. *Coe,* 98 U. S. 48. This combination is not a mere aggregation of separate elements. Each one of the parts contributes to the combined result. It is not like Nimmo's apparatus in *Pickering* v. *McCullough,* 104 U. S. 310, cited on the argument. Here the result is due "to the joint and co-operating action of all the elements." It is not mere mechanical juxtaposition, as in that case, and as in the second claim of the patent in *Tack Co.* v. *Manuf'g Co.* 109 U. S. 117; S. C. 3 Sup. Ct. Rep. 105.

It is further contended on behalf of the defendants that the Taylor patent is void because it is for several distinct and separate inventions not connected in design or operation, as shown in the several claims of the patent. The proposition is not without force, and it seems to be rather a close question whether the several inventions of the patentee, although they are all to be applied in use to a single article, namely, a trunk, could be properly included in one patent. Section 4884, Rev. St., provides that "every patent shall contain a short title or description of the invention or discovery, correctly indicating its nature and design," etc., from which the implication is drawn that every patent shall embrace but one invention.

As was said by the supreme court in *Bennet* v. *Fowler,* 8 Wall. 445:

"It is difficult, perhaps impossible, to lay down any general rule by which to determine when a given invention or improvement shall be embraced in one, two, or more patents. Some discretion must necessarily be left on this subject to the head of the patent-office. It is often a nice and perplexing question."

Several distinct improvements in one machine may be united in one patent. *Moody* v. *Fiske,* 2 Mason, 112; *Wyeth* v. *Stone,* 1 Story, 274. So, too, where a patentee, having invented a new and useful combination consisting of several ingredients, which, in combination, compose an organized machine, also claims to have invented new and useful combinations of fewer numbers of the ingredients, the several combinations may be embraced in one patent. *Gill* v. *Wells,* 22 Wall. 24.

In *Bates* v. *Coe,* 98 U. S. 48, it is remarked that more than one invention may be secured in one patent; but I suppose this has reference to different inventions in one machine or combination.

In *Marheimer* v. *Meyer,* 9 Fed. Rep. 460, the patentee's claim in one of the patents was for a feed cup in connection with the vertical wires of a bird cage, and it was insisted that the patent disclosed two distinct inventions, each independent of the other, and that, therefore, the patent was void. But the court held that the inventions were connected together by being appropriate for use in the same cage for the common purpose of making a bird cage, and therefore they might be joined in one patent.

For several improvements of distinct machines, it has been repeatedly held, there must be several patents. "A patent, under the general patent act, cannot embrace various distinct improvements and inventions; but in such a case the party must take out separate patents." *Barrett* v. *Hall*, 1 Mason, 447. Here the court was treating of a case where each of the patented machines might singly ·have a distinct and appropriate use and parts unconnected with any common purpose, and therefore each was a different invention.

In *Moody* v. *Fiske, supra,* it was ruled that though several distinct improvements in one machine may be united in one patent, it does not follow that several improvements in two different machines, having distinct and independent operations, can be so included.

So, too, in *Wyeth* v. *Stone, supra,* it was said that a single patent cannot be taken for two distinct machines not conducing to the same common purpose or object, but designed for totally different and independent objects. See, also, *Root* v. *Ball*, 4 McLean, 177.

In *Evans* v. *Eaton*, 3 Wheat. 454–506, the supreme court intimated a doubt whether a patentee could claim in the same patent improvements on different mechanisms so as to give a right to the exclusive use of the several mechanisms separately, as well as a right to the exclusive use of these mechanisms conjointly.

In *Hogg* v. *Emerson*, 11 How. 587, it was held by a majority of the court that the inventions in question which related to an improvement in the steam-engine, and in the mode of propelling therewith either vessels on the water or carriages on the land, were all a part of one combination when used on the water, and therefore might be included in one patent. The court say it is doubtful, on principle, whether a patent is invalid which is for two or more entirely separate and independent inventions, but that it is settled by authority that a patent for more than one invention is not void if they are connected in their design and operation, and this they held was the case before them. Four of the justices, including the chief justice, dissented, and in the dissenting opinion of Mr. Justice CATRON it is impliedly held that distinct and disconnected inventions cannot be included in one patent.·

Except some decisions of the commissioner of patents cited in the brief of counsel, the cases referred to are all the adjudications bearing upon this question which have been brought to the attention of the court. There may be other cases in which the question has arisen. In the light of judicial decision on the subject, it is doubtful whether the patentee Taylor could rightfully claim his various inventions in one patent, although they were all designed to be applied to a trunk, and related to an improvement in trunks. The patent is for each improvement or device specified in the respective claims. The specification of one is separate and distinct from the other, and each is capable of a separate and independent use. Even if one is in a certain sense auxiliary to the other, it is not indispensable to

the use of the other. In fact, there is no connection, either in purpose, design, or operation, between the several inventions. They are not like a combination of various devices or improvements, all of which make one operative mechanism—one concrete organization. They are all designed for use upon one article, namely, a trunk; but they do not all tend to the accomplishment of a single result, further than that all combine generally to improve the trunk. Each is a distinct invention or improvement by itself, and the operation of one has no relation to the operation of the others. Although all may be placed upon the same trunk, each singly has a distinct and appropriate use, and in such use they are unconnected. At best, it is a matter of serious doubt whether all the claims of the patentee should have been joined in one patent. The case is one in which it seems to be within the province of the court to permit the patentee and his assigns, if they shall desire so to do, to file in the patent-office a disclaimer so as only to claim the invention specified in the third claim of the patent, and I shall dispose of the case by making the filing of such disclaimer a condition upon which the relief prayed in the bill will be granted.

The remaining defense is that the complainant is not entitled to a decree for an accounting, because certain of the patented articles, of which the trunk fasteners in evidence, marked Exhibits 13 and 15, are samples, were not marked "patented," as required by section 4900, Rev. St. The fasteners not so marked are known as the small sizes. The statute provides that it shall be the duty of all patentees to give notice to the public that the article is patented, by fixing thereon the word "patented," together with the day and year the patent was granted; "or when, from the character of the article, this cannot be done, by fixing to it, or to the package wherein one or more of them is inclosed, a label containing the like notice." As this defense is not set up in the answer, it is doubtful if it can be made at the hearing. *Rubber Co.* v. *Goodyear*, 9 Wall. 788. However this may be, the complainant testifies that it is so difficult to stamp the patented article of the sizes in question as required by the statute, that the packages in which they are shipped are so stamped and labeled, as are also the invoices. I think the omission to stamp the article itself is sufficiently explained, and that this defense ought not to be sustained.

When the complainant shall have furnished sufficient proof to the court that a proper disclaimer has been filed in the patent-office, so that he shall claim only the invention specified in the third claim of the patent, a decree will be entered enjoining the infringement of that claim, and for an accounting of profits and damages, but without costs.