WESTERN ELECTRIC CO. v. HOME TEL. CO. et al.

(Circuit Court, S. D. Alabama. February 9, 1898.)

No. 202.

1. PATENTS—ANTICIPATION.

It is not sufficient, to constitute an anticipation, that the devices relied on might, by a process of modification, reorganization, or combination with each other, be made to accomplish the function performed by the devices of the patent sued on.

2. SAME—NOVELTY—BURDEN OF PROOF.

To overcome, on the ground of want of novelty, the prima facie case made by the patent itself, the burden is on defendant to clearly establish that defense, and every reasonable doubt should be resolved against him.

**3. SAME—INFRINGEMENT.**

In a patent for improvements in multiple switch boards for telephone exchanges, the subject-matter is not one in which form is essential; and in determining questions of infringement the rule will be applied that, disregarding mere matters of form, the court will ascertain whether the several devices or elements perform the same functions in substantially the same way, to accomplish the same result.

**4. SAME—SWITCH BOARD FOR TELEPHONE EXCHANGES.**

The Scribner patent, No. 330,061, for improvements in multiple switch boards for telephone exchanges, whereby is effected a direct connection of two subscribers' lines through the usual plugs and cords, at the same time cutting out of the talking circuit thus formed all the separable contacts belonging to such lines, and also the conductors leading to the individual annunciators, held not anticipated as to claims 2, 4, and 6, which disclose a pioneer invention; and claims 2 and 4 held infringed, and claim 6 not infringed.

**5. SAME—SUIT AGAINST CORPORATION AND OFFICERS.**

Decree will not go against officers of an infringing corporation, joined as defendants, when it does not appear that, in their individual capacity, they have violated the complainant's rights, or derived any profit or advantage from the patent sued on; and the bill will be dismissed as to them.

Bill in Equity for Infringement of a Patent.

Barton & Brown and Geo. L. Roberts, for complainant.

Pillans, Torrey & Hanaw and Chas. B. Tilden, for defendants.

TOULMIN, District Judge. This is a suit in equity, brought by the Western Electric Company on letters patent of the United States No. 330,061, dated November 10, 1885, as the assignee of Charles E. Scribner, to whom the patent was granted, against the Home Telephone Company, Albert S. Lyons, and Adam Glass. The patent is for improvements in multiple switch boards for use in telephone central offices or exchanges. The complainant is a corporation under the laws of the state of Illinois, and has been engaged in furnishing apparatus for telephone exchanges, it appears, for some years past. The defendant company is an Alabama corporation, and the individual defendants are Albert S. Lyons and Adam Glass, citizens of Alabama, and residents of Mobile, and, respectively, the president and treasurer of this company. The bill is of the usual form in patent infringement suits, and charges the defendants with infringing the patent stated above by reason of the defendants' use at their telephone exchange in the city of Mobile of certain apparatus called "multiple switch boards." Originally it was charged that claims 2, 3, 4, and 6 of the Scribner patent were infringed. On the hearing claim 3 was withdrawn from such charge. This leaves before the court only claims 2, 4, and 6 of this Scribner patent, No. 330,061.

The nature and purpose of the invention embodied in this Scribner patent, and the patent itself, will need to be first stated, in order to have a clear understanding of the issues involved. The patentee says:

"My invention relates to multiple switch-board signals, and is designed to enable the operators at the different boards to test, to determine, what lines are in use, while the circuits are so arranged that any two lines may be connected together upon any one of the boards, without including in their circuit the re-

sistance of the contact points of the switches. In all these systems heretofore used, the contact points of the switches have been included in the circuit of the two lines when connected together. My invention is designed to avoid the resistance of these contact points by the use of circuits and apparatus more simple than any heretofore devised, while the operators are enabled to make the usual tests to determine whether any line wanted is already in use at another board. It is evident that this arrangement of circuits may be used with various kinds of switches other than the spring jacks having insulated frames, as described, and as shown in Fig. 1. In Fig. 2, I have shown simple connecting bolts, c', d', e', for making the line connections; means being provided, as shown, for breaking the circuit, f', when a connection is made at either bolt. With circuits thus arranged, any two lines may be connected directly on either of the boards, without including the resistance of the contact points of the spring jacks in their circuit, while such signals and tests may be made as may be desired."

Scribner, the patentee, testifying for complainant, states the object of his patent, and among other things says:

"The patent in suit, No. 330,061, is for a multiple switch board. The result sought to be accomplished by the invention of this patent is the connection between any two subscribers' lines in a telephone exchange, the exclusion of contact points from the circuit of such connections, while, at the same time, the indicator annunciators of such connected lines are temporarily cut off from their respective lines."

In defining his invention, as embodied in this patent, by way of aiding in an understanding of it, Scribner further testified:

"The invention of the patent in suit provides a spring-jack switch upon each of the several switch boards for each line, the spring-jack switch being constructed to provide a contact piece to which the plug made contact when introduced into the spring jack, a spring normally resting upon a contact point and circuits with which the line is to be connected. By this construction the line wire is directly connected with a portion of each spring jack, this portion being that with which the plug is designed to make contact. The line wire is also connected with all the contact points, and all of its spring jacks, and thence through the indicating annunciator and battery and to ground return. The introduction of a plug into any spring jack gave a contact between the plug and that portion of the spring jack directly connected with the line wire, while at the same time the contact points of the jack in which the plug was inserted were open, and the circuit to the indicating annunciator interrupted, and this, too, no matter which spring jack of the line was employed. A plug, when inserted in the spring jack and having a conducting cord leading to another plug, would serve, upon the introduction of the second plug into a spring jack belonging to any line, to connect directly together the two lines, without the contact points and any of the spring jacks being included in the connected circuit. This construction, with its results, is the principal feature of the patent in suit."

Minnis, a witness for defendants, in his twenty-second answer says:

"Without going into any long dissertation upon the specifications and claims of the patent in suit, and their interwoven relations one to the other, I think that I can safely boil this down into one specific combination claim, to wit: A multiple telephone switch board, so arranged that talking circuits can be established thereon without including in said talking circuit any of the separable contacts of any of the jacks of either of the lines incorporated in said talking circuits, and without preventing or interfering with the operation of the usual apparatus commonly employed for the production of what is generally known and described as a 'busy test,' substantially as described."

I do not perceive any substantial difference, if any difference at all, in the statement of the invention by these opposing witnesses. Lock-

wood, an expert witness for complainant, in speaking of the separable contact springs, and the defective operation resulting from the failure to cut them out of the talking circuit, as made when subscribers are to talk over the line (his reference being to the art as it existed prior to the advent of the Scribner patent), says:

"When such separable spring contacts are thus introduced into an electrical circuit, it is a fact that at each pair a certain resistance or opposition to the perfect passage of the electric current is introduced into the circuit; or, in other words, when two portions of the circuit conductor are held in contact by pressure only, their resistance is greater than if, at such point of the circuit, the metallic conductor, such as a wire, had been undivided. In many forms of applications of electrical circuit, this additional resistance at each spring contact makes no appreciable difference to the passage of the current; but the electrical current employed in speaking telephony is very delicate and very weak, and requires that the resistance of the circuit shall be as low as possible, in order that its passage through the said circuit from one subscriber's station to the other shall be facilitated."

Thus it will be seen that there were weighty objections to the multiple switch boards, prior to the Scribner patent, because, in them, a talking circuit composed of two subscribers' lines, and their connections effected in the exchange office, included the separable contacts of all the spring jacks of the two lines embraced in such circuit. The several, or perhaps numerous, contacts, the evidence shows, were liable to, and often did, maintain poor electrical union,—often filled between their touching points, more or less, with dust or other foreign substance, which impaired, and even sometimes destroyed, their contact, electrically speaking, and such several separable contact points of each line at each board, or board section, also constituted a series of breaks, or breakable points, in the talking circuit depended upon by users of telephones for the transmission of speech. The evidence in this case is strongly persuasive, if not wholly convincing, that the invention embodied in the patent involved herein overcame and eliminated these difficulties, and produced a substantial and meritorious advance in this useful art. By means of this invention, as expressed in the patent and as shown by the evidence, the series of separable contacts of each of any two lines to be brought together are cut out of the talking circuit when any two of the spring jacks on a board, or board section, are electrically connected by a pair of plugs and their conducting cords. Thus, referring to Fig. 1 of the patent, if the upper plug is inserted into the spring jack, or switch, c, in the upper left-hand part of the figure, and then the lower plug is inserted into the spring jack or switch on the same left-hand board, the subscriber's line, a, and the subscriber's line, b, will become electrically connected for talking purposes. At the same time each of the upper spring jacks, or switches, d, and e, of the line, a, will be cut out of the circuit, and each of the spring jacks or switches of the line, b, lowest under d and e, will also be cut out.

A representation of Fig. 1 of this patent is given on opposite page.

With this understanding of the patent, consideration will now be given to the defenses urged by counsel for defendants. These are: (1) That there is such failure and insufficiency of proof adduced by

Fig. 1.

the complainant to establish the charge of infringement that no proper determination of such issue is possible. (2) That the state of the art prior to the grant of the patent in suit was such as to preclude the allowance of any claims having the scope and capable of the construction that can be inferred from the terms of the claim and from the face of the patent. (3) That by the well-known construction of the statute no original patent should have been granted for the subject-matter covered or defined by the claims of the patent in suit; such subject-matter having been so far and so clearly disclosed by prior patents to the same grantee that the rights of the latter were thereby relegated to his remedy by reissue, and not susceptible to protection by this patent. (4) That the patent on which this suit is founded is not

infringed by defendants, even if it be admitted, tentatively, that said patent is valid and capable of a broad construction. (5) That the patent in suit is void, as to the claims in issue, under the decision of the supreme court in Miller v. Manufacturing Co., 151 U. S. 201, 14 Sup. Ct. 310, and Thomson-Houston Electric Co. v. Winchester Ave. Ry. Co., 71 Fed. 192, and authorities therein cited. And (6) that if it be admitted, for the sake of argument, that the patent in suit has any legality whatever, the claims in said patent can only be saved by the narrowest construction, rigidly restricting them to the precise form, construction, and arrangement shown and described.

The first objection indicated above seems to be based upon the position that the diagram drawing introduced by complainant, and marked "Complainant's Exhibit, Diagram Defendants' Apparatus," was not a correct representation of the multiple switch board admitted by defendants to be used by them in their exchange at Mobile. Aside from whether defendants are right in contending that such exhibit is not an accurate representation of said apparatus, the defendants themselves offered in evidence, as a correct representation of the apparatus alleged to be an infringement, two diagram drawings, marked "Defendants' Exhibit A, Diagram of Defendants' Apparatus," and "Defendants' Exhibit B, Diagram of Defendants' Apparatus." This done, the complainant rested its case upon this drawing, A, described by defendants' witness as a correct illustration of defendants' apparatus.

A representation of defendants' Exhibit A is given on opposite page.

There does not, therefore, seem to be any merit in this first objection urged by defendants.

The second defense urged will next be considered. The prior letters patent relied upon to sustain this proposition are Nos. 252,259, 292,865, 292,866, 330,059, 330,060, 294,482, and 269,238. The last two here named, although not found in defendants' brief, are nevertheless in the record, and are referred to in complainant's brief. The point urged in this second defense is that, in view of the above patents, there is such an exhibition of the prior art that the patent in suit must be judicially construed, in respect of its claims, down to a scope narrower than the scope indicated by the terms of the claims and on the face of this patent. But defendants' witness Clark, responding to cross questions 48, 49, and 50, says he does not find, in patents Nos. 292,866, 330,059, and 330,060, that, when two lines are connected together, without reference to the particular board upon which the connection is completed, there is a talking circuit which is free from all of the separable switch contacts of the spring-jack switches of the two lines thus connected, as such feature is exhibited in defendants' system and in the Scribner patent, No. 330,061, in suit. This witness was asked to distinguish and point out any differences that may exist between patents Nos. 292,866, 330,059, and 330,060, and, after detailing alleged differences, he states that he finds that the patent No. 292,866 is the same as the patent No. 330,061, the patent in suit, with certain exceptions, which he specifies. Whatever, then, be the merit or demerit, or the accuracy or inaccuracy, of these statements and discussions, it remains that the patents mentioned do not, as they now exist, according to this witness, contain the invention covered by com-

plainant's patent, but, on the contrary, that changes must be made in them before it is even pretended that they will show this invention.

The supreme court, in Topliff v. Topliff, 145 U. S. 156, at page 161, 12 Sup. Ct. 828, has said:

"It is not sufficient, to constitute an anticipation, that the device relied upon might, by modification, be made to accomplish the function performed by the patent in question, if it were not designed by its maker, nor adapted, nor actually used, for the performance of such functions."

The force of this ruling, and the similar ruling in Clough v. Barker, 106 U. S. 175, 1 Sup. Ct. 188, is made manifest, in its practical appli- cation to the rights of parties, by the reflection that all earlier patents set up in defense against a later patent sued upon are but the record evidence of the status the art has reached. The rights under such later patent are subject to what this record evidence actually shows. To change this record, by permitting theoretical modifications of these earlier patents, would be the same, in principle, as to change, by inter- polation or modification, any other evidence between the parties.

The witness Minnis (answer 24) discusses at great length the ques- tion of whether there is anything novel and of a patentable character in the patent in suit, in view of patents Nos. 292,865, 292,866, 330,059, 330,060, 294,482, and 269,238. He does not say that he finds the in- vention of the patent in suit in either, or all, of these patents, but would make it appear that, by changing some or all of them, or by combining some of them together, thus resorting to the process of modifications and reorganizations, he would then arrive at this invention. For in- stance, he says:

"Thus, it will be seen, by means of these four patents, we have been brought up step by step to an arrangement and combination almost identical with that shown in the patent in suit."

But this "almost," with its indefinite bounds, forms the missing link, and, it is thought, brings this form of attack on complainant's patent substantially within the rule pronounced in Topliff v. Topliff, supra, and Clough v. Barker, supra, and is also within the objection to such a course pointed out by Judge Coxe in the case of Johnson v. Railroad Co., 33 Fed. 500, where he says:

"The defendant assembles every similar device, description, or suggestion, in the particular art not only, but also in analogous, and even remote, arts. Every- thing which has the least bearing upon the subject is brought in and arranged by a skillful expert in an order of evolution which resembles most clearly the invention which is the subject-matter of attack. Having thus reached a point where but a single step, perhaps, is necessary to success, and knowing from the inventor exactly what that step is, the expert is asked if the patent discloses invention, and, honestly no doubt, answers in the negative. There is always the danger, unless care is taken to divest the mind of the idea added to the art by the inventor, that the invention will be viewed and condemned in the light of ascertained facts. With his description for a guide, it is an easy task to trace the steps from the aggregation to the invention."

"In the law of patents, it is the last step that wins," says Justice Brown in The Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450. Bearing in mind that defendants' witness Clark distinguishes between the patent in suit and such of these alleged prior patents as he consid- ers, and that defendants' other witnesses, Paca and Minnis, do not point out the invention in suit in these earlier patents, it is pertinent to consider the rebuttal offered by complainant, through Scribner, the patentee, who discusses all of these alleged earlier patents, as also patent No. 306,669, offered by defendants in connection with the Clark deposition, but not discussed by any of defendants' witnesses. Scrib- ner, in answers 1 and 7, points out that these patents, three of which are his own, do not contain the invention of the patent sued on. Com- plainant's witness Haskins also considers these patents, and testifies

that he does not find in them the invention in question; and I concur in this view.

This discussion disposes of the third proposition of defendants, to the effect that the patent in suit should not have been granted, because the same subject-matter was disclosed in prior patents to the same patentee, and that his rights were relegated to his remedy by reissue, and not to an original patent. It is not clear, from my view of the "prior patents" to this patentee, how they could be reissued for the subject-matter covered by this one patent.

These considerations dispose, also, of the fifth contention of defendants that the patent in suit is void, as to the claims in issue, under the decision in Miller v. Manufacturing Co., 151 U. S. 186, 14 Sup. Ct. 310, and Thomson-Houston Electric Co. v. Winchester Ave. Ry. Co., 71 Fed. 192. In Miller v. Manufacturing Co., the later patent contained the same mechanism as the earlier patent to the same patentee, and the essential or only difference in the two patents was that the earlier claimed the mechanism in respect of its two functions, and the later claimed the mechanism in respect of one of those functions; the case presenting one in which there was no division of mechanism, but only a division of functions as between the two patents. There is nothing of that sort as between the patent in suit and any of the patents offered by the defendants.

In the additional brief filed on behalf of defendants, considerable space is devoted to showing that patent No. 321,390, dated June 30, 1885, issued upon an application filed October 25, 1879, contains a substantial disclosure of the separable contact, cutting-out feature; defendants contending that everything disclosed by the patent in suit, except, possibly, the peculiar form of the apparatus and the particular form of the test circuit, belongs to the patentee's earlier patent, No. 321,390, and say that the idea of excluding one set of contacts at the same time connection is made with another set is clearly set forth in this patent, No. 321,390, and that the patent in suit was therefore void, or anticipated. This patent, No. 321,390, describes its spring jacks thus:

"One part, B', of the switch, I term the 'line' portion, and the other part, B, I term the 'test' portion."

These portions are not used simultaneously, but each is used, when occasion requires, for its own particular purpose.

Defendants' witness Minnis (answer 23), speaking of these contacts in patent No. 321,390, says that:

"Both of these contact switches being of a separable character, the insertion of a plug would still leave in the circuit those contact switches between the plug and the point of entry of the line into the switch board."

It appears, then, that upon entering the plug of a connecting cord into any of the series of switches there would still be left, in the talking circuit, the separable contact points of all the intervening switches located between the plugged switch and the point of entry of the talking line into the switch board. This statement accords with the testi-

85 F.—42

mony of the patentee, Scribner, in his answer to question 7, wherein he says:

"In this patent, No. 321,390, instead of a single switch upon each multiple switch board, there are two switches for each telephone line, and these two switches are insulated from each other, and the contact points of all the switches of a given telephone line are included in the line circuit of the telephone line. A connection of any two lines of this system gives a talking circuit through these contact points, thus introducing an objectionable resistance,—a defect which the patent in suit was designed to and does obviate. Neither the construction nor the result of the patent in suit can be possibly secured by any employment of the apparatus of my patent No. 321,390."

The witness Haskins, for the complainant, in answering question 8 in his deposition, says:

"I will next consider Mr. Scribner's patent, No. 321,390, of June 30, 1885. This patent also contains the same objectionable feature of including in the talking circuit the contacts of the switches when two subscribers are connected for conversation, and accordingly has no significance."

Then Minnis, in his twenty-third answer, speaks of certain changes to be made in patent No. 321,390, to make it accomplish the result effected by the patent in suit. For instance, he says that:

"A substitution of one bolt with two sets of contact switches would be an absolute equivalent of the two bolts, each having a contact switch."

Again, he says:

"Going a step further, and substituting for this bolt with two sets of contact switches [of] a bolt with one set of contact switches and one solid switch contact, and we have an arrangement under which the insertion of the plug in any switch would leave no separable contacts included in the circuit thus established."

If patent No. 321,390 covers broadly the identical invention covered by the patent in suit, as is claimed by defendants' counsel, why the substitution or change of bolts and contact switches, as suggested by witness Minnis? Why any change of construction in the arrangement shown in patent No. 321,390, if it possesses all the functions of the patent in suit? "The grant of letters patent is prima facie evidence that the patentee is the first inventor of the device described in the letters patent and of its novelty. The burden of overcoming the prima facie case made out by the production of the patent is upon the defendant, and the defense of want of novelty must be clearly established before a court will be justified in setting aside the patent on this ground. Not only is the burden of proof to make good this defense on the party setting it up, but it has been held that 'every reasonable doubt should be resolved against him.'" Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970; Palmer v. Village of Corning, 156 U. S. 342, 15 Sup. Ct. 381.

This disposes of all of defendants' propositions, except the fourth and sixth, which go to the point that there is no infringement by defendants of the patent sued on, and to the further point that the claims can only be saved by a narrow construction, restricting them to the exact form, construction, and arrangement described by the patent in suit and illustrated therein. It does not seem to admit of doubt that this patent accomplishes a new result, namely, the direct connection

of two subscribers' lines through the usual plugs and cords, at the same time cutting out of the talking circuit thus formed all the separable contacts belonging to such lines, and cutting out the conductors leading to the individual annunciators. The instrumentalities employed to accomplish this result are not, individually, new instrumentalities, but they are brought together in a new relation, combination, or organization, and thereby produce this advance in the art of telephony, and which, according to the evidence in this case, is meritorious in respect to its practical utility, and the advantages it affords in the actual use of telephones, by simplifying the apparatus in telephone exchanges, and by improving the tone and efficiency of talking circuits, through the elimination of objectionable resistance to the low current employed in such circuits. As defendants' Exhibit A is accepted by both parties to the suit as a substantially correct representation of defendants' apparatus, as used in their exchange, that exhibit has been adopted by me as the basis of comparison with the patent sued on.

Defendants' witness Clark, in answer 23, says:

"The said defendants' Exhibit A represents correctly the apparatus as used in the switch board at Mobile, Alabama, by the Home Telephone Company. This is a correct drawing."

### Clark was further asked:

"In defendants' system, the circuit of each telephone line may be traced normally from the subscriber's station, through the separable contact of the different spring-jack switches of the line, and thence through the line annunciator, and thence back to the subscriber's station. Is not this correct? A. Yes, sir (cross answer 78). Referring to Fig. 1, for example, of the patent in suit, is not each spring jack of each line provided with three contacts, one contact being normally open, and the other contacts being normally touching each other or closed together? A. Yes, sir (cross answer 79). Is not the same true as to the spring jacks of defendants' system? A. Yes (cross answer 80). When a connecting plug is inserted in a spring jack of the patent in suit, is not the normally open contact of the spring-jack switch closed to the plug to form a circuit to the telephone line, while at the same time the separable contacts are disconnected, so as to cut off the portion of the line or the branch which contains the line annunciator? A. Yes, sir (cross answer 81). Is not the same true of defendants' system? A. Yes, sir (cross answer 82). In the case of the patent, and in the case of defendants' system, when two lines are connected together, none of the separable contacts of such lines are included in the united circuit of the two lines; that is, in the talking circuit. Is this correct? A. Yes, sir (cross answer 83)."

### And said witness Clark was further asked:

"Referring to Fig. 1 of the patent in suit, do you not find a branch from the telephone line connected with the normally open contact of the spring-jack switches of such line? A. Yes, sir (cross answer 87). Referring to defendants' apparatus, as illustrated in defendants' Exhibit A, are not their contact springs, e1 and e3, of the spring-jack switches of the telephone line of station A, and are not these contacts, e1 and e3, both branched from the said telephone wire, and are they not normally open? A. Yes, sir (cross answer 88)."

### Paca, another of defendants' witnesses, stated that:

"Exhibits A and B, diagrams of defendants' apparatus, correctly represent the arrangement of the circuits and apparatus at the exchange of the Home Telephone Company in Mobile."

The patentee, Scribner, was asked:

"Bearing in mind the prior state of the art, and that testimony [the testimony in behalf of defendants], in so far as the same relates to claims 2, 4, and 6, please state whether this system, as used at Mobile, contains the invention of the patent as pointed out in said claims, giving your reasons at length for any opinions you may express. A. The invention of the patent as set forth in claims 2, 4, and 6, to which you call my attention, is, in my opinion, realized in defendants' apparatus.' In fact, I think it will be apparent that the defendants have copied in their exchange the combination of devices described in each of the claims 2, 4, and 6 (answer 6)."

Some distinction between the patent in suit and the defendants' apparatus is sought by counsel for defendants to be made in respect to the "open branch" in the patent (wire for connecting contacts of the several boards), and the wires, a2, a3, and a4, of defendants' apparatus. But their function is the same, and the difference between such wires and their arrangement is one merely of form. The subject-matter, however, of this patent, and the subject-matter of defendants' apparatus, for operative purposes, are not things whose essence is their form. Hence the rule of infringement laid down by the supreme court in Machine Co. v. Murphy, 97 U. S. 120, 125, seems applicable here. In that case the court says:

"Except where form is of the essence of the invention, it has but little weight in the decision of such an issue; the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge of similarities or differences by the names of things, but are to look at the machines, or their several devices or elements, in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function, in substantially the same manner, to obtain a like result, always bearing in mind that devices in a patented machine are different, in the sense of the patent law, when they perform different functions, or in a different way, or produce a substantially different result. Nor is it safe to give much heed to the fact that the corresponding devices in two machines, organized to accomplish the same result, are different in shape or form the one from the other, as it is necessary, in every special investigation, to look at the mode of operation, or the way the device works, and at the result, as well as at the means by which the result is attained."

This patent was not "the mere carrying forward of new or more extended application of the original thought" shown in patent No. 321,-390, as claimed by defendants' counsel; nor was it "a change only in form, proportion, or degree, doing substantially the same thing, in the same way, by substantially the same means," as patent No. 321,390. It is true that it was a patent for new combinations of what were old elements when considered by themselves; but "a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made." Palmer v. Village of Corning, supra. My opinion is that the patent in suit accomplished an absolutely new and useful result,—that it was a pioneer invention. "The principle is well settled in the patent law that where an invention is one of a primary character, and the mechanical functions performed by the machine are, as a whole, entirely new, all subsequent machines which employ substantially the same means to accomplish the same result

are infringements, although the subsequent machine may contain improvements in the separate mechanisms which go to make up the machine." Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299.

I will now consider the claims, specifically. in connection with defendants' Exhibit A, and interpolate numerals after the elements, of the claims, placing the same numerals on what I find to be the corresponding elements in the said exhibit. Thus, claim 2 reads:

"(2) At a telephone exchange central office, the combination of multiple switch boards [1] with telephone lines [2 and 3], each permanently connected to a metallic portion of its switch upon each board, each telephone line being also connected through the contact points [5] of its switches and to ground, and means [6] whereby the circuit of the branch wire [7] of any given line is opened [as at 8], when a connection [contact 9] is made with the line [2] at any board, whereby any two lines [2 and 3] may be connected together [as at 9], upon either of the boards [1], without including in their circuits the contact points [5] of either of their switches."

### And claim 4 reads:

"(4) The combination, with a telephone line [2 or 3], provided at each switch board [1] of a multiple system with a connecting bolt or switch [4, 5], of a portion [7] of said line, connected through an annunciator [10] to ground [11], and means [6] for breaking said line [7] when a connection is made with the telephone line [2 or 3] of either one of its bolts or switches [4, 5], substantially and for the purpose specified."

From this comparison of the patent in suit with the model or diagram of the apparatus shown to be in use by the defendants, it seems clear to me that the defendant Home Telephone Company has adopted substantially the invention alleged to be infringed. "In determining the question of infringement, the court is not to judge about similarities or differences by the names of things, but is to look at the machines, or several devices or elements, in the light of what they do, or what office or function they perform, and to find that one thing is substantially the same as another, if it performs substantially the same function, in substantially the same way, to obtain the same result." Cantrell v. Wallick, supra. There is no conflict in the testimony as to the fact that the invention covered by the patent in suit and the apparatus in use by defendants accomplish the same result, and there is no material conflict as to the construction and operation of the respective apparatus or devices shown by the patent and the admitted diagrams in the case; but there is a want of harmony in the conclusions of the witnesses on the conceded facts. There is a difference in their expert opinion on the question whether the two machines or devices are substantially identical, and employ substantially the same means to obtain the result, which, it is conceded, is the same. But the comparison made brings me to the conclusion, agreeably, also, to the weight of the evidence, that claims 2 and 4 are infringed. As to claim 6, I think that the construction or details of the spring jacks, as elements, enter somewhat into the organization it sets forth, and, as defendants' detail construction of spring jacks is not clearly exhibited, my decision as to this claim 6 is that infringement is not shown.

It is not shown in the evidence that defendants Albert S. Lyons and Adam Glass have in their individual capacity violated any of complain-

ants' rights, or that they have individually derived any profit or advantage from the patent sued on. No reason is shown why a decree should be rendered against them as individuals. As to them, therefore, the bill is dismissed at complainant's cost. Howard v. Plow Works, 35 Fed. 743; Boston Woven Hose Co. v. Star Rubber Co., 40 Fed. 167; Consolidated Fastener Co. v. Columbia Fastener Co., 79 Fed. 795.

The bill is sustained as to claims 2 and 4, and dismissed as to claim 6, and a decree will be entered accordingly, and for an injunction and an accounting of the profits and damages in respect to claims 2 and 4, the injunction not to be operative until 60 days after the entry of the decree, on account of the public inconvenience that might result in summarily enjoining the defendant Home Telephone Company in the use of its switch boards.