### WESTERN ELECTRIC CO. v. ROCHESTER TEL. CO. et al.

(Circuit Court, W. D. New York. December 29, 1905.)

1. PATENTS—INFRINGEMENT—TELEPHONE SWITCHBOARDS.
    The Scribner patent, No. 330,061, for a multiple telephone switchboard, was not anticipated, and discloses patentable invention; also *held* infringed as to claims 2, 4, and 6.

2. SAME—NOVELTY.
    The Scribner patent, No. 427,621, for improvements in telephone switchboards, is void for lack of patentable novelty in view of the prior art, being for a mere change of form producing no new result, and which was within the domain of the skilled workman.

In Equity. Suit for infringement of patents. On final hearing.

De Witt C. Tanner (George P. Barton, of counsel), for complainant.
Satterlee, Bissell, Taylor & French (Charles A. Brown, of counsel), for defendants.

HAZEL, District Judge. This is a suit in equity for infringement of two letters patent No. 330,061, dated November 10, 1885, and No. 427,621, dated May 13, 1890, both granted to Charles E. Scribner, inventor, assignor to complainant. The earlier patent, which will be considered first, relates to improvements in multiple switchboards and signals for telephone exchanges. The construction consists of a series of switchboards or duplicate sections, each section being provided with connecting terminals, or what are known as "springjacks," for all the lines leading into the central office. Each springjack has a separable contact switch adapted to disconnect a line signal or annunciator. The object achieved by the multiple switchboard arrangement is to enable the operator at any section thereof to con-

veniently connect the lines of two subscribers by thrusting a plug into the desired springjack. An operator stationed at each section of the switchboard is supplied with several pairs of plugs attached to a cord, so that such operator can quickly unite the lines for the purpose of allowing conversation to be carried on between calling and called subscribers. To direct the attention of the operator to a call, each line leading into the central office is provided with an annunciator or line signal and an additional springjack, termed the "answering jack," which is located near the line signal. When the plug is inserted in the answering jack the operator can respond to a call. The line signal, meanwhile, is disconnected while the subscribers' lines are telephonically connected. Before the line signal is cut off the electric current flows in series through the different switch contacts with which each springjack is provided, and the desired short-circuiting does not occur until after the current has influenced such switch contacts as are located "beyond the one where the plug was inserted."

The proofs show that much interference and impairment in telephonic communication have been experienced by users on account of electrical resistance of the separable contacts of the springjacks. Such resistance of the contact points weakened the current, and the distinctness of conversation over the telephone line was seriously impaired. Defendant contends that the trouble mentioned was due to the mechanical construction of the springjack and switches, but a preponderance of the evidence shows that the fault, because of the resistance, principally rested in the failure of the separable contact parts to close the line circuit permanently. The object of the patentee was to efface and eliminate such difficulties and impairments. This could be accomplished only by devising means to overcome the resistance of the contact points. In this state of the art, the patentee provided an uninterrupted path for the current between the different lines, which tended to avoid the resistance of the contact points, while at the same time he retained the method for disconnecting the branch line which enabled the operator to test a line (a feature of the patent not infringed) upon the instant that the plug entered the springjack. Referring to this arrangement, the specification says:

"In all these systems heretofore used the contact points of the switches have been included in the circuit of two lines when connected together. My invention is designed to avoid the resistance of these contact points by the use of circuits and apparatus more simple than heretofore devised, while the operators are enabled to make the usual tests to determine whether any line wanted is already in use at another board."

To eliminate the objections mentioned, the patentee provides each springjack with a tubular frame connected with the line circuit, together with a special wire conductor, or branch line, extending through the different switch contacts of the springjacks to the line signal. Further describing the invention the specification says:

"Each line is provided with a suitable switch on each board and is connected permanently to the frames of its switches. Each telephone line is

also connected, as heretofore, through all the spring and contact points of its switches and through the individual annunciator of the line to the ground."

The following illustrated drawing of figure 1 of the patent shows the circuit-testing device:

Fig. 1

Figure 2 shows the line connections with the modified form of switch.

Fig. 2

In explanation of the above diagrams, Mr. McBerty, complainant's expert witness, testifies:

"Each springjack is constructed with a switch lever and its contact, and with an additional contact part or line spring. The latter line springs are connected together and with the lines of the substation by uninterrupted continuous conductors. The line annunciator or signal is located in a separate branch, with springs from the line at the head of the system, and traverses the separable contacts of the switch lever and its resting anvil in all the jacks belonging to the line one after the other. When a plug is inserted in any jack of the line it is brought into immediate and uninterrupted connection with the wire to the substation. At the same time it breaks the switch lever from the resting anvil or contact, and so interrupts the branch containing the line annunciator."

The involved claims, 2, 4, and 6, read as follows:

"(2) At a telephone exchange central office, the combination of multiple switchboards with telephone lines each permanently connected to a metallic portion of its switch upon each board, each telephone line being also connected through the contact points of its switches and to ground, and means whereby the circuit of the branch wire of any given line is opened when a connection is made with the line at any board, whereby any two lines may be connected together upon either of the boards without including in their circuits the contact points of either of their switches."

"(4) The combination, with a telephone line provided at each switchboard of a multiple system with a connecting bolt or switch, of a portion of said line connected through an annunciator to ground, and means for breaking said line when a connection is made with the telephone line at either one of its bolts or switches, substantially as and for the purpose specified."

"(6) In a multiple switchboard system, a telephone line provided with a springjack at each switchboard of the system, said springjacks being provided with insulated metallic frames, and said telephone line being connected directly to each of said insulated frames, and also through an annunciator, to ground through the springs and contact points of said springjacks, whereby a connection may be made direct to the telephone line at any board at the same time the portion of said line containing the annunciator is broken, substantially as set forth."

There is no marked difference between claims 2 and 4. In claim 6 the insulated metallic frame arrangement to which the lines are directly connected is specifically mentioned. The testing feature is not included in the claims, and no special form of testing the lines for the purpose of determining whether a line is busy or in use is deemed essential; nor does claim 6 of the patent expressly impose any limitations regarding a special form of springjack. Upon this point the specification says:

"It is evident that this arrangement of circuits may be used with various kinds of switches other than the springjacks having insulated frames as described, and as shown in figure 1."

The patent in question has previously been the subject of attention, and the claims in controversy have been construed by the Circuit Court for the Southern District of Alabama in an action instituted by the complainant against the Home Telephone Company of Mobile. 85 Fed. 649. In that action the court in a carefully considered opinion decided that the invention in suit possessed patentable merit and that it was a distinct advance in the art of telephony. Claim 6 was held not infringed by the defendant in the Mobile Case; it not being shown that the details of construction of the springjack were

used by the defendant. In this case the complainant claims, and the evidence supports the claim, as hereinafter stated, that the defendant's insulated springs which are permanently connected to the subscribers' line wire, are the direct equivalent of the insulated metallic frames specified in claim 6; that any two lines may be connected for the purpose of carrying on a conversation on either section of a switchboard without regard to the resistance of the separable contact points; and that at the same time the desired signals and tests may be made—is the kernel of the invention. In other words, the act of cutting off the line signal while making connection with the line is of the essence of the improvement and was a new and useful conception. Having stated the object of the patent and the advantages claimed for it, consideration will now be given the various defenses interposed by the answer of the defendant.

The individual defendants, managing officers of the defendant company, deny any participation in the alleged infringing acts complained of, while the defendant Rochester Telephone Company challenges the validity of the patent, denies infringement, and alleges that the patents are improperly joined in this suit. Was the embodiment of the branch line and metallic portion of each springjack a patentable element? Were such features familiar to the art at the date of the patent in question? Complainant asserts the novelty of the disputed claims, on the ground that each jack, having a metal frame to which the line is connected permanently, is distinct from the separable contacts, while the branch line running though such contacts or switches is retained.

A brief statement of the prior art will enable a clearer understanding of the involved claims. The earlier switchboards in connection with telephony were the so-called dial switchboards having no separable contact points, the single-board class, multiple switchboards without separable switches or contact points, and finally the multiple switchboards having the characteristics of the Scribner patent in suit; that is to say, a multiple switchboard wherein the line circuit traversed through the separable contacts of the springjacks to the annunciator or line signal. It would not be useful to attempt an analysis of the numerous patents introduced in evidence by the defendant to show the antecedent art. Most of such patents were fully considered and analyzed by Judge Toulmin, who reached the conclusion that the prior art was clearly distinguishable from the structure described in the patent under consideration, and also that the patentee had by his invention accomplished a patentable result.

The prior patents chiefly relied on by the defendants to support the denial of invention are the patents to Sabin, Nos. 239,557, dated March 29, 1881, and 249,262, dated November 8, 1881, to Firman, No. 252,576, issued January 17, 1882, and the prior patent, No. 262,701, to C. E. Scribner, August 15, 1882. In the Sabin patents apparatus are shown having contact points wherein the line signal is disconnected by inserting a plug in the springjack. Such patents, it is confidently asserted, disclosed the alleged novel features of Scribner's invention in suit. It is undeniable that Sabin described a method

which enabled connecting the subscribers' lines unhampered by the resistance of the separable contact points of the circuit; but the switchboards of the Sabin class were not provided with separable contacts in the switches. It is important to keep in mind that the Scribner patent in suit relates to multiple switchboards of a special class, a class wherein the line signal is opened by the separable contacts induced by the act of the operator in inserting the plug in the springjack. This contention of the complainant finds emphasis in claim 2, wherein it is stated that each telephone line is also connected through the contact points of its switches underground. The Firman patent does not disclose any means by which the troubles in the multiple switchboards could be eliminated, and no such definite suggestion is contained in the specification as would warrant holding that the Scribner structure in question was obvious or within the ordinary skill of the trained electrician. The defendant lays stress upon the prior Scribner patent, No. 262,701, which relates to a multiple metallic circuit system, and insists that such construction completely anticipates the claims in suit. In this structure the frames of the jacks are connected permanently with the line and the jacks apparently have the same method of cutting off the line annunciator as shown in the patent in suit. The evidence, however, establishes that this apparatus was open to the objection which Scribner's later invention removed. The defendant, in view of such disclosures, contends that the conception and its successful achievement were perfectly obvious, and accordingly involved nothing more than the exercise of mechanical skill. The development of the details and the evolving of the principle by which the resistance of the contact points was eliminated were something more, in my opinion, than a mere modification or alteration of form by which the desired result was attained. That the switches or separable contact points of the springjacks were prevented from successfully closing the line circuit on account of the accumulations of dust and corrosion due to gases, is substantiated by the evidence. The specification in suit admits the state of the art as follows:

"In all these systems [multiple switchboards of the prior art] heretofore used, the contact points of the switches have been included in the circuit of two lines when connected together. My invention is designed to avoid the resistance of these contact points by the use of circuits and apparatus more simple than any heretofore devised, while the operators are enabled to make the usual tests to determine whether any line wanted is already in use at another board."

The defendants' counsel has argued with much earnestness against this conclusion, but I am clearly of opinion that Scribner, by modifying and altering the structure of his earlier patent, made a substantial and meritorious step forward in the art. It is true, as already stated, the Scribner patent, No. 262,701 related to a metallic circuit system, and, although to change to a grounded system may not have involved patentability, still I am persuaded by the evidence that the inefficiencies of the talking circuit would not have been removed by a simple substitution of grounding connections, or by running to ground the wire, a. As said in Western Electric Co. v. Home Telephone Co., supra:

"It does not seem to admit of doubt that this patent accomplishes a new result, namely, the direct connection of two subscribers' lines through the usual plugs and cords, at the same time cutting out of the talking circuit thus formed all of the separable contacts belonging to such lines, and cutting out the conductors leading to the individual annunciators. The instrumentalities employed to accomplish this result are not, individually, new instrumentalities, but they are brought together in a new relation, combination or organization, and thereby produce this advance in the art of telephony, * * * and the advantages it affords in the actual use of telephones, by simplifying the apparatus in telephone exchanges, by improving the tone and efficiency of talking circuits, through the elimination of objectionable resistance to the low current employed in such circuits."

This conclusion on practically the same evidence as here is persuasive, and I am satisfied of its correctness. The additional evidence introduced by the defendant is thought insufficient to warrant holding that the patent in suit is anticipated. As to infringement. The Webster diagrams in evidence, according to complainant's expert witnesses, indicate inter alia the use by the defendant in its earlier and later apparatus of the combination of elements described in the claims in controversy. In the switchboard of the defendant company the line circuit in connection with the longer line springs of each jack to the branch line leads from the contact points of the first jack to another. The plug, as illustrated in Webster's diagram No. 2, after lifting the same from the contact anvil, is put into the springjack and is closely held by the longer springs thereof. Upon the removal of the plug from the contact anvil the branch wire running to the line signal and ground battery is cut off, while the sleeve of the plug upon being pushed into the desired line springs operates to connect the line. Each line or circuit running into the central office is connected permanently to the insulated metallic frame of its springjack upon each board or section and also through the contact points of its switches, and thus to the ground. By such means, without fully stating the details, an uninterrupted circuit of separable contacts is provided to the defendant's structure. The evidence relating to infringement of claims 2 and 4 is persuasive, and the substitution of the ground system for the metallic system as shown in the modified structure is unimportant. The form of construction of the defendant's line springs is concededly different from complainant's metallic portion of the switch, but the patentee did not limit himself to a particular form or style of insulated metallic frames to be used in connection with the jacks. The springjacks used by the defendant company as to results attained, notwithstanding the conflicting testimony on this point, were practically the same as complainant's. In view of the scope to which the patent is fairly entitled, as evidenced by claim 6, the equivalency of the two elements is thought beyond serious question. The case comes within the doctrine enunciated by the Supreme Court in Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935, and by the Circuit Court of Appeals, Eighth Circuit, in Kinloch Tel. Co. v. Western Electric Co., 113 Fed. 652, 658, 51 C. C. A. 362, where it is said:

"The two devices were constructed for the same purpose. They have the same mode of operation, and they accomplish the same result in the same way, by equivalent mechanical means. The appellants cannot escape liability for

the appropriation of the entire essence of this invention by the slight change they have made in a single element of the combination which embodies it."

And in Bundy Mfg. Co. v. Detroit Time-Register Co., 94 Fed. 524, 540, 36 C. C. A. 375, the court said:

"To be entitled to the benefit of the doctrine of equivalents, it is not essential that the patent shall be for a pioneer invention in the broad sense of the term. If his invention is one which has marked a decided step in the art, and has proven of value to the public, he will be entitled to the benefit of the rule of equivalents, though not in so liberal a degree as if his invention was a primary character."

Such being the facts and law, my conclusion is that claims 2, 4, and 6 are infringed by the defendant.

The Scribner patent, No. 427,621, will now be considered. By this invention the terminal plugs mentioned in the patent are provided with tips which are insulated from the metallic shank thereof, and are permanently connected by a cord with the operator's table. The invention is to enable the operator, on call, to make a connection and tests conveniently and readily, with the different subscribers' lines leading to the multiple switchboard. Claims 1, 2, 4, and 5 are involved, and it is alleged that such claims are valid and have been infringed by the defendants. The first and fourth claims, typical of the others, read as follows:

"(1) The combination with the springjack switch, of a double contact plug inserted therein, one of the insulated contacts of said plug passing by the switch lever and being entirely insulated therefrom when in place, and the lever of the switch being closed upon the insulated sleeve or shank of the plug, substantially as described.

"(4) In a multiple switchboard system, telephone lines connected with a switch on each of two or more boards, and a test wire for each line connected with the insulated frames or test pieces of the lines respectively, in combination with a pair of double stranded flexible cords, one strand of said cords being connected with a telephone and the other including a clearing out annunciator, and the double-contact terminal plugs of said cords, the extreme tips or terminals of said plugs being connected with said strand which leads to the telephone, whereby the lines may be tested and connected together, substantially as described."

The fourth claim emphasizes the combination which includes one strand of the cords connected with the telephone and another cord with the clearing-out annunciator. The fifth claim omits reference to the cord and the clearing-out annunciator, but specifies a cord connection with the double contact terminal plugs. The operation of the system is thus described in the specification:

"The operator, seeing the shutter, 1, fall, at once inserts plug, a, in the springjack, b, of the line. The tip, e, of plug, a [Fig. 2], passes by the spring of springjack, b, and the spring is closed upon the shank, g. The line connected with springjack, b, is thus closed through the operator's telephone by cord, h, to plug, c, and from the heel of plug, c, to plate, k, and thence by wire, i, through the telephone."

By the means employed, the operator is put in direct communication with the calling subscriber immediately on pushing the desired plug in the springjack of the line of the subscriber who has called the

central office. Then, upon ascertaining his wishes, the operator lifts another plug and impinges the tip thereof to the test piece of the line; if the line is not in use the test wire will open and no sound or click will be heard in the telephone. If, however, a line is in use at another board in the series, then such line is closed at the point where the switch connects with the test circuit of such other board, and the operator on impinging the tip of the plug to the testing device will hear a click in his telephone, indicating that the line is busy. Upon the instant that the plug is inserted in the springjack the spring thereof closes upon the shank of the plug. For the convenience of the operator, an extra terminal plug and cord connected with the operator's telephone is provided by the patentee, which upon touching the rear portion of the inserted plug establishes a branch connection. This enables the operator to readily ascertain whether the users of the telephone have finished their conversation or not.

The defenses are lack of novelty and noninfringement. It is only necessary to consider the first. The essence of the alleged invention is to conveniently enable the operator to make the so-styled busy test, by simply touching the tip of the plug to the springjack and then, if the line is not in use, to complete the connection. In the patent to Scribner, No. 305,021, application dated September 20, 1892, a method of signaling is shown for the purpose of ascertaining whether a subscriber's line, with which connection is desired at one board, is in use at any other board. The test feature was commonly known in the art. Indeed, the earlier Scribner patent recognized that there were several ways of testing lines. Defendant contends that no novelty is disclosed by the claims in question, as practically the same arrangement for testing is shown in the Scribner patent to which allusion has just been made, and, further, that the sole difference between the two patents is that in the earlier a "single two-part plug and a double-strand conductor, instead of two one-part plugs with single-strand conductor" was used. An examination of the record shows that there was nothing new in the ground connection. The springjack and the plug tip together with the method of connecting the appliances were familiar to the art at the date of the invention.

Complainant does not seriously controvert the proposition that the various elements of the combination, except one, were known to the skilled electrician. Patentability is claimed on the ground that the prior art does not show a terminal plug, such as that illustrated in the drawing attached to the patent, and much importance is given to the feature that tip, e (Fig. 2), of the plug, is connected with strand, f, while the shank, g, is connected in the ordinary way with the other strand, 1, of the cord. I do not accede to the claim of the complainant herein that invention is disclosed in arranging the circuit so as to utilize the tip of the plug as a conductor. The affirmative of this proposition, based upon the evidence, is unpersuasive. The simplicity of such test circuit arrangement at the date of the patent in suit, in view of the prior Scribner patent herein mentioned, to my mind is undeniable; and it manifestly was principally designed as a convenience

to the operator. Associated with a connecting circuit, it performed no new function. As summarized by counsel for defendant:

"The utility of both (elements) is only the separate utility of each. There is no action in concert, but a mere assembling of two old devices. The separate function of each remains the same and is not affected or controlled by the other when the two are placed together."

I think the function or result was not patentably different than that which was known, and which had been performed by the separate method of testing and making connection, hereinbefore described. It has frequently been held that a patentable combination must not only be new, but it must produce a new result, or an old result in a better way. In National Progress Bunching-Mach. Co. v. John R. Williams Co., 44 Fed. 190, 12 L. R. A. 107, Judge Coxe appropriately states the law applicable to the evidence here. He says:

"If the combination be old and the result new, or if the result be unchanged and the combination new, in either case there is no patentable novelty. In a combination of old elements all the parts must so act that each qualifies every other. If they act independently, or if one acts independently of the others, it is an aggregation. It is not enough that these independent parts are conveniently associated in one machine, if each performs the same function it did before they were united. They must be so connected that the new result is due to their co-operative action."

There are numerous decisions to a similar effect, and other citations of authorities on the point are not necessary. The feature of complainant's patent in controversy doubtless was an improvement over the earlier Scribner testing device, but I think it a was mere change of parts, or rather a step forward, such as a skilled electrician would have been able to make. The argument that the art of telephony indicates that many patents were previously granted for slight changes of form and advances which the skilled electrician would have been able to devise has some merit. As said by Judge Bradley, in Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438:

"The process of development in manufactures creates a constant demand for new appliances, which the skill of ordinary head workmen and engineers is generally adequate to devise, and which, indeed, are the natural and proper outgrowth of such development. Each step forward prepares the way for the next, and each is usually taken by spontaneous trials and attempts in a hundred different places. To grant to a single party a monopoly of every slight advance made, except where the exercise of invention somewhat above ordinary mechanical or engineering skill is distinctly shown, is unjust in principle and injurious in its consequences."

My conclusion is that, in view of the prior state of the art, the change of form or method in complainant's structure was not patentably novel, but was within the domain of the skilled workman. The next point is in relation to the liability of the defendant officers for the infringement of patent No. 330,061. The proofs do not establish sufficient cause for retaining herein as defendants the officers of the Rochester Telephone Company, who were joined as defendants. They are not shown to have personally participated in the infringing acts as shown in relation to the earlier Scribner patent in suit, and accordingly

as to such defendants the bill is dismissed. As to such patent No. 330,061, herein held infringed (now expired), a decree may be entered sustaining the same and for an accounting.

The bill alleging infringement by the defendant company of patent No. 427,621, is dismissed for want of equity.

So ordered.