### HORN v. BERGNER et al.

(Circuit Court, D. Maryland. May 13, 1895.)

1. PATENTS—INVENTION.

A method of overcoming disadvantages and difficulties in the use of celluloid for covers for books, albums, and like articles, by forcing the whole cover, with the celluloid veneering attached, into a heated die having the exact shape required, *held* to show invention, it appearing that the method produced beautiful, artistic, and commercially successful results, and was hit upon by the patentee only after continued experiment, and that it was not discovered by others long engaged in applying celluloid veneering to such articles.

2. SAME—BOOK COVERS.

The Hafely patent, No. 488,630, for a method of applying celluloid veneering to the covers of books, albums, and other like articles, *held* valid, and infringed.

3. SAME—MARKING "PATENTED."

Failure to give notice, or to mark an article "Patented," as provided in Rev. St. § 4900, only affects the question of damages, and not the right to an injunction.

This was a bill by William C. Horn, president of Koch, Sons & Co., an unincorporated joint-stock company, against Frederick Bergner and others, for infringement of a patent.

Witter & Kenyon, for complainant.
H. T. Fenton, for defendants.

MORRIS, District Judge. The complainant is an unincorporated joint-stock company, under the laws of New York, suing by its president, as the assignee of patent No. 488,630, December 27, 1892, granted to Alfred C. Hafely, who is also a member of the complainant company. The defenses are want of novelty, want of patentability, want of notice of the patent, and noninfringement. The patent is

for a method of making corners, covers, and like parts for books, boxes, and similar articles of celluloid or kindred material. It appears from the testimony that sheet celluloid, which is made of extreme thinness, and which in sheets is highly elastic, dense, and durable, and susceptible of a high polish, and may be tinted of any color, and which can be rendered plastic by heat, had, before the alleged invention of Hafely, been used as a veneering for the covers of albums and books. The sheet of celluloid having been embossed by any desired design by being pressed between heated dies, and, being cut to proper sizes, was cemented to the foundation for the cover, and the edges were turned over upon the cover and made fast by cement or glue or small metal fastenings. The result of this method was very unsatisfactory, particularly at the corners. The beauty of the sheet celluloid largely consists in its resemblance to solid ivory, and to the impression on the sight and senses that it is not a thin veneer, but that the cover was made of a solid material. In turning the sheets of celluloid over the corners, prior to Hafely's alleged invention, there was always some wrinkling, or fullness, or want of smoothness, or physical indication of some kind which disclosed that the celluloid was but a thin, applied veneer, and this marred the effect and merchantableness of the result. So much was this the case that it was usual to make the sides of the cover of celluloid, but to make the covers of plush, so as to conceal this defect, and for this reason the use of celluloid for album covers was quite limited. Hafely, with other associates in the complainant joint-stock company, was engaged in the manufacture of albums, fancy boxes, and similar articles, and for some time was unable to overcome this difficulty, which, for the purposes of manufacture, was a great obstacle in the use of sheet celluloid. After trials and experiments, he hit upon the method which he has patented, and which has now produced results which are very beautiful and artistic, and which have obtained great commercial success. The covers of such albums and books and similar articles, in order to have the substantial appearance required by the ornamental figures embossed on the sheet celluloid veneering, must be made thick, of wood or paper boards, or filled in with padding, and the corners must not be sharp and rectangular, but should be rounded and beveled, or cup-shaped, as the complainant's expert has called them. The discovery of Hafely was that, while the celluloid sheet veneering could not be bent to the shape of these corners, if a die was prepared which had the exact shape of the corners, and was heated, and the whole cover, with the celluloid veneering attached, was forced into the die, the celluloid took the exact shape of the corners. The heat rendered the sheet plastic, and conformed the molecular arrangement of its substance to the required form, and the polish of the surface was not impaired, and the appearance was that of a solid block of celluloid or ivory. The pressing of the cover or corners into the heated die left the sheet with the edges turned up at right angles to the plane of the cover, and he found that if these edges were by the application of a heated iron turned over flat against the upper side of the cover, and sufficient

heat applied at the corners to blend the lapping material together, then the appearance was that of a solid cover, durable, and pleasing to the eye and touch.    Hafely's specification is as follows:

"The object of my invention is to produce covers, corners, and like articles for books, boxes, albums, and other uses, which shall have certain ornamental features, not heretofore accomplished, and which may be readily and economically manufactured, may be somewhat elastic, and of shapes which do not tend to injure surrounding objects. * * * I have * * * discovered a new and useful manner of preparing such covers and corners from thin sheet celluloid or other substance rendered plastic by heat, and the finished article can thereby be made to possess features not heretofore possible by any method I am aware of. The elasticity of the celluloid, together with its plasticity when warm, renders it peculiarly adaptable to my invention; and, as it may be made transparent, translucent, or tinted and grained, I am enabled by embossing, and by the use of suitable coloring, and suitable tinted backings beneath it, to obtain a variety of beautiful effects. * * * In making box covers according to my invention, I may employ a wooden frame, B, which is shown in cross section in Fig. 3, and is provided with ornamental moldings as shown. The celluloid sheet, cut to the proper size, and embossed with ornamental figures, as will hereinafter be described, as plainly if preferred, is then laid upon the frame. A heated matrix corresponding in shape to frame, B, is then brought down, and the celluloid, which is heated, and rendered plastic, thereby is pressed into shape between the matrix and the frame, the latter forming a patrix therefor, to which the celluloid conforms. It is preferable to first coat the frame with celluloid cement, so that the celluloid, when pressed into place by the heated die, may be firmly cemented to the frame. After this operation, the edges of the celluloid sheet project perpendicularly from the frame. They may then be heated and turned down, as in figure 2, and a flat, heated iron applied to them. By a pressure from or against the heated iron the overlapping corners are thoroughly blended and united. * * * I form covers for books and albums in a similar manner. Preferably, however, the cover is embossed, and its edges turned at right angles, as shown in Fig. 7, by means of two heated dies, which render the material plastic, and capable of taking up the curved outline required. A pad made of wadding or other soft material is then substituted in the place of the patrix die, as in Fig. 8, and the corners turned over, and secured at the rear of the cover, as is shown in Fig. 6, in a manner substantially the same as in the case of the box just described. * * * The construction may be modified somewhat by substituting a permanent patrix in the process of embossing and turning up the edges upon the back of such patrix to form a cover for either boxes or albums. * * * In the forms heretofore described, the finished article has contained a frame, of permanent padding, to which the celluloid is secured. In figures 10, 11, and 12 is shown, on the other hand, a cover adapted to be fitted over, and to be secured to, the finished cover of a book or album. In forming this corner, the sheet of celluloid is first cut to a suitable blank, as in figure 10. This blank has the side flaps which turn over the edges of the book, and the flap or tongue to cover the corner where the two flaps meet. The blank is first pressed between two suitable dies, which are heated, and render the blank soft and plastic. By these dies the central or exposed portion is embossed with ornamental designs, and given the rounded form shown in figure 12 at E. The flaps, C, and the tongue are turned up at right angles on the line, F, and present the appearance indicated by dotted lines in figure 12. The flaps and tongue are then treated with suitable cement, and subjected to pressure between the flap back of the patrix and a heated plate, and by this action of heat and pressure are secured together, and securely blended, as shown in figure 11. The corner is now complete, and may be removed from the die, and the patrix slipped out of it. A full celluloid side or cover of a book may be made in a manner similar to the corner just described, it being only necessary to use a blank, dies, etc., provided with two instead of one corner."

The claims are:

"(1) The method of making covers, corners, and like parts of books, boxes, and other uses of sheet celluloid or kindred material, rendered plastic by heat, which consists of forming up its border by suitable dies, first at right angles, and then parallel to the cover or corner, and uniting them by the application of heat and pressure, substantially as set forth. (2) The method of making covers, corners, and like parts of books, boxes, and other uses, of sheet or kindred material, rendered plastic by heat, which consists of form-ing up its border of suitable dies, first at right angles, and parallel to the cover or corner, uniting and blending them by the application of heat and pressure, and padding or filling the interior so formed, substantially as set forth. (3) The method of making corners, covers, and like parts for books, boxes, and other uses, of celluloid or other material that may be rendered plastic by heat, which consists in applying heat and pressure by suitable dies, folding over the borders, and cementing or otherwise securing them to-gether, substantially as set forth. (4) A cover or corner for books, boxes, and like uses, consisting of sheet celluloid or kindred materials, and provided with round corners, the borders of the said cover or corner being folded over upon its back, and a tongue or flap at meeting edges of said borders, cemented or otherwise secured thereto, substantially as and for purposes set forth."

It is quite true, as urged by the defendants, that the use of heated dies in embossing figures upon sheet celluloid was well known at the date of Hafely's patent, and, indeed, the sheets used for his purposes are often furnished to the trade by manufacturers, already embossed with a central figure, but it is very remarkable that, if Hafely's method of forming album covers of celluloid required no invention, it was not practiced before he disclosed it in 1890 or 1891. Sheet celluloid was to be had ever since Hyatt invented the process of making it in 1878. The beauty, usefulness, and commercial success of the articles made after Hafely's method are not questioned, and yet it does not appear that any one, before his invention, was ever able to apply sheet celluloid successfully, as he has applied it. It appears to me by no means obvious that the result sought for was to be obtained by having a heated die just the size and shape of the box cover or album side, which would form up the round corners, and turn up the sides at the edges by turning over the edges with a heated tool. The experiments of Lefferts, a witness for defendants, who for 15 years had been a manufacturer of sheet celluloid, in mak-ing a round corner of celluloid suitable for pocket books, as a substi-tute for metal corners, and his failure, show the difficulty, and show that Hafely's method was not one which even an experienced work-man in celluloid would hit upon. It seems to me that both the novelty and the patentability of Hafely's method are fully sustained.

With regard to the defense of public, authorized use for more than two years before the application for a patent, I do not think the evidence in support of this defense is convincing. It is true that the substance of Hafely's invention was contained in a prior application, which he made on September 25, 1889, and subsequently abandoned. This was two years and seven months prior to the application on which his patent was granted. Hafely testifies that album covers made by this process were not put upon the market until 1891, or the latter part of 1890, which was within two years of his second application.

It is contended that there is no evidence of infringement, and that the specimens of defendants' manufacture were purchased before the assignment of the patent to the complainant company; but in the testimony of defendant William Bergner he speaks of having begun the manufacture of albums, such as the one offered in evidence by the complainant as an infringement, in 1892, and as having continued to manufacture them, and describes the process now practiced by the defendant. His testimony is a practical admission of the continued manufacture. He describes the process which the defendants now use, and claims that they do not use the heated die to turn up the sides; but, after placing the sheet of celluloid between two heated dies to emboss it, they use a heated brake to turn up the sides, and bend them over onto the cover, and then use a heated tool to flatten them down on the inside of the cover. The specimen produced by Bergner to illustrate his process clearly shows that what he calls the embossing die is the exact size and shape of the cover; that it has the exact shape of the beveled edge, and rounded, cup-shaped corners; and that the sheet of celluloid, upon being forced into this heated die, is permanently molded into the exact shape of the edges and corners of the cover. It may be true that the sides are not turned up exactly at right angles to the plane of the cover; but they are turned up sufficiently to permanently take the shape of the edges and corners, and the heated brake used merely completes the turning over. The specimens clearly show that the defendants used, and continued to use up to the taking of the testimony, all the essentials of complainant's patented process.

Another defense is that the complainant's articles were not marked "Patented," as provided by section 4900, Rev. St., and that no notice was given to the defendants. Whatever doubt there may be, under the proofs, as to marking the complainant's articles "Patented," I think the actual written notice is sufficiently proved; but, at the most, the want of notice or marking would only affect the question of damages, but not the right to an injunction. The complainant is entitled to the usual decree for an injunction and an accounting.