BINNS v. ZUCKER & LEVETT CHEMICAL CO. et al.

(Circuit Court, S. D. New York. August 21, 1895.)

1. PATENTS—NOVELTY AND INVENTION—ANALOGOUS USE.

The use, in a buffing wheel composed of superposed scraps of fibrous material, of spiral instead of radial stitching, or stitching in concentric circles, for the purpose of remedying such defects as whipping out of stitches, variations of density, and uneven wearing away at the periphery, is not so analogous to the previous employment, in composition grinding and polishing wheels, of metal strips imbedded therein, and running spirally outward from the center for the purpose of strengthening resistance to centrifugal strain, as to deprive such spiral stitching of its claim to novelty and patentable invention.

2. SAME—INVENTION—FAILURE OF PRIOR EXPERIMENTERS.

The fact that two persons skilled in the art, having before them the same problems as the patentee, attempted to solve them, and failed, is persuasive evidence that the successful device of the patent involves invention.

3. SAME—PRIOR USE—PRESUMPTION FROM PATENT.

The presumption created by the patent is not overcome by evidence of prior use, which, when viewed in its most favorable light, merely raises a doubt whether the patentee was the original inventor of the device.

4. SAME—BUFFING WHEELS.

The Binns patent, No. 306,464, for a buffing wheel, shows patentable invention, and is valid.

This was a bill by Robert Binns against the Zucker & Levett Chemical Company and others for infringement of a patent.

Chas. E. Mitchell, for complainant.

Betts, Atterbury, Hyde & Betts, for defendants.

TOWNSEND, District Judge.   Complainant, by this bill, asks for an injunction and accounting by reason of defendants' infringement of his patent No. 306,464 for a buffing wheel, dated October 14, 1884. The defenses urged are lack of patentable novelty and prior use. The prior art relating to buffing wheels, the defects therein, and the invention covered by the patent, are accurately stated by the patentee, as follows:

"Heretofore buff wheels have been made of pieces of textile, fibrous, and other material united by sewing through and through the mass of superposed pieces in radial lines or concentric circles. In using such wheels, the workmen open the periphery of the wheel to loosen the pieces; and as the wheel is worn, its periphery being made most dense by and in the lines of stitching, it follows that there will be a constant variation and inequality in the density and effectiveness of the active surface of the wheel. This defect produces bad work. Furthermore, with the radial stitching, as the wheel wears, the stitch threads whip out and cut the workman's hands, and this defect is, if anything, aggravated by sewing in concentric circles. Now, in attempts to overcome these defects, I have found that, by sewing the material of the wheel together by stitches arranged in a spiral line continuous from the rim of the wheel to its center, I get a wheel of practically uniform density

throughout, and in which the whipping out of the stitches is very materially, if not altogether, removed. My invention, therefore, consists of a buff wheel of textile or other fabric or material sewed together in superposed places by stitches extending spirally from rim to center, all as hereinafter particularly set forth and claimed."

The claim is as follows:

"A buffing wheel composed of rags, scraps of textile fabric, filamentous material, or the like, compressed and united by one or more spiral lines of stitching, substantially as described."

· The patent chiefly relied on to show lack of patentable novelty is No. 228,257, granted to Gilbert Hart, June 1, 1880, for "grinding and polishing wheels." Said wheels, being formed of composition, and compressed in a mold, require protection against centrifugal strain. To secure this result, Hart provided "convolute strips or wires of a metal which will wear away as easily or more easily than the composition, one end of each of said strips or wires terminating near the center of the wheel, and the other extending towards its periphery." In this way, "each of the braces, while re-enforcing the wheel in all directions, interferes with the working surface, as the wheel is worn away, only at a single point, which is continually changing in position as the wheel decreases in size, so that a practically uniform action of said working surface is secured."

Inasmuch as the prior art showed spiral stitching applied to other branches of industry, and buffing wheels composed of filamentous material sewed in concentric circles, or consisting of scraps of yielding material stitched together, it is forcibly argued that it did not require invention to substitute in buffing wheels this obvious mode of stitching in spiral lines, and that, even if it might otherwise have involved invention, the suggestion furnished by the Hart patent was sufficient to enable anyone skilled in the art to construct such a wheel. A comparison of the Hart and Binns patents shows that the former merely sought, by means of metal braces, to re-enforce a molded grinding composition against centrifugal strain, with the least possible interference with its working surface. Binns sought to remedy the defects in the earlier scrap wheels, such as whipping out of stitches, constant variations of density in the active surface of the wheel, to obviate the necessity of opening its periphery, and to insure "its wearing down evenly to the clamps attaching it to its driver." Applying to this device the recognized tests of patentable novelty, it appears that, while the two industries are in a certain sense related to each other, the transfer involved a change from plastic composition to cloth, from metal strips to stitches, in order to adapt the spiral idea to the new use. The device of Binns was designed to cure defects not found, and to secure results not sought in the Hart grinding wheel. "Novelty is not negatived by prior structures in another art which were not designed or used, prior to the new invention, to do, its work, though afterwards so modified in form and proportions, in the light of that invention, as to perform its function." Knickerbocker Co. v. Rogers, 61 Fed. 297; Potts & Co. v. Creager, 155 U. S. 597; 15 Sup. Ct. 194.

There is manifestly good ground for the claim that this transfer involved invention. It further appears that the defendants have abandoned the earlier constructions, and infringed the patented device; that, by its merits, it has displaced the old concentric and radial sewed wheels throughout the country; that its sales have continuously increased since 1883, aggregating hundreds of thousands, and past the million mark. "Where the question of novelty is in doubt, the fact that the device has gone into general use, and displaced other devices, employed for a similar purpose, is sufficient to turn the scale in favor of the inventor." Potts & Co. v. Creager, supra.

The evidence in support of the defense of prior use is not of such a character as to require much consideration. It is not only indefinite, but it is inconclusive. It does not show a prior conception of the advantages of a true spiral stitch. Much of the testimony goes to show that, by the word "spiral," the witnesses mean concentric circles connected by cross-over stitches, which would not in any sense answer the purpose of the patented invention.

I find, however, in the following facts, shown by said testimony, further evidence in support of complainant's claim of patentable novelty: The defendant, Alexander Levett, president of the defendant corporation, has been engaged in the manufacture of buffing wheels since 1879 or 1880. In 1882 he filed an application for a patent for a scrap of buffing wheel, in which he states the same objections to the then-existing wheels as those stated in the patent in suit. It did not occur to him, however, to obviate these objections by spiral stitching. He only illustrated and claimed various kinds of lines running inward from the periphery of the wheel as the solution of the problem; and when he found his application in interference with the application of one Whittemore for a patent for a scrap wheel, composed of scraps glued at the center or stitched together in the old way, he abandoned his application, and obtained an assignment of the Whittemore application. The fact that these two persons, skilled in the art, having presented to them these same problems, failed successfully to solve them, is persuasive evidence that the patented device involved invention. It is true that, in connection with Levett's said application, spiral stitches were suggested, and drawings thereof made; but Mr. Betts, Levett's counsel, says that this spiral form of stitching was not embraced in the application, because he did not think, from what Mr. Levett told him, that a patent could be obtained the .on. Afterwards, when Binns showed his buff to Levett, and stated that he proposed to patent it, Levett told Binns he would like to make it, and to take Binns into his employ, but did not state that he had ever made spirally stitched buffs. These facts show that, even if the idea of a true spiral stitch ever occurred to Levett, it was merely as an equivalent form of the concentric stitch, without any new function or result. He did not think it would solve the problems of "irregularity in strength or stiffness of the wheel at different conditions and periods of its wear," as stated in his application; and

his counsel, not understanding from his statement that such form would accomplish the result sought, or would perform any function distinct from that of the ordinary concentric wheel, did not insert a drawing thereof in the application.

All that can be said of the evidence of prior use, viewed in the most favorable light, is that it may raise a doubt as to whether Binns was the original inventor of the patented improvement. "Perhaps there is no safer rule in such cases than to give great weight to the presumption created by the patent, and to treat it as valid, unless the party seeking to overthrow it shows a prior public use of the invention by evidence of facts or circumstances which are so persuasive as to leave no room for doubt or controversy." Miller v. Handley, 61 Fed. 100.

Let a decree be entered in favor of complainant.