WILKINS SHOE-BUTTON FASTENER CO. v. WEBB et al.

(Circuit Court, N. D. Ohio, W. D.    October 4, 1898.)

1. PATENTS—DUPLICITY—SEPARATE MACHINES USED TOGETHER.
     Separate machines may be included in the same patent, though distinct
   and independent, where each is the complement of the other, in the ac-
   complishment of the same general end.
2. SAME—INFRINGEMENT.
     Where two machines, both new and which co-operate to accomplish a
   single result, are included in the same patent, the wrongful use of either,
   though disconnected from the other, is an infringement.
3. SAME—SUIT FOR INFRINGEMENT—MULTIFARIOUSNESS OF BILL.
     Where the manufacture, vending, and use of articles in the form in
   which they are made and sold by defendant are each infringements of
   two separate patents owned by plaintiff, one covering the articles them-
   selves and the other the package in which they are put up, which con-
   duces to their convenient use and adds largely to their market value, the
   plaintiff may, and should, join the causes of action for the infringement
   of the two patents in the same bill.
4. SAME—VALIDITY—EVIDENCE.
     A patent is itself prima facie evidence of its validity, and a defendant,
   to successfully attack it, must produce proof leaving no fair doubt as to
   its invalidity.
5. SAME—INVENTION—SIMPLICITY OF DEVICE.
     In determining whether an article which appears simple embodies in-
   vention, the fact that it supersedes all other appliances, or that a useful
   and successful commercial result has been attained through its recognition
   by the public in extensive use, has a controlling, if not a conclusive, ef-
   fect.
6. SAME—BUTTON FASTENERS.
     The Wilkins patent, No. 266,941, for a button fastener, is not invalid for
   want of invention, and not anticipated.
7. SAME—HOLDER FOR BUTTON FASTENERS.
     The Wilkins patent, No. 429,828, for a holder for button fasteners, is
   valid, and not anticipated.

This is a suit in equity for the infringement of two patents relating
to fasteners for shoe buttons.    On final hearing.

Frank Higley, for complainant.
Almon Hall, for defendants.

HAMMOND, J.    The plaintiff company is the owner of a patent
dated October 31, 1892, No. 266,941, for a button fastener, and also
of another patent dated June 10, 1890, No. 429,828, for a holder for
button fasteners.    The bill is filed for an infringement of both these
patents, and, on argument, it is conceded that there has been infringe-
ment if the patents are valid.

### Single Patent for Two Inventions.

There is a defense made of multifariousness which was overruled
on demurrer.    This is also somewhat connected with the defense that
patent No. 429,828 is bad on its face because it covers two separate
and distinct devices.    That patent specifies and claims, not only the
device for holding the fasteners, but also one for packing them on
this holder, not at all involved in this suit.    This defense is, in sub-

stance, that the grant of the patent by the patent office is multifarious, and the contention is that it is therefore invalid.    The leading case on this subject is that of Hogg v. Emerson, twice reported, once in 6 How. 436, and subsequently in 11 How. 587.    I do not find that it has ever been cited by the supreme court, though often in other courts, except to the point that the specifications and the whole language of the patent must be looked to in the interpretation of its claims of invention.    Le Roy v. Tatham, 14 How. 156, 179; Mitchell v. Tilghman, 19 Wall. 388; Rob. Pat. § 742.    In that case it was originally ruled, as reported in 6 How., that it is a well-established exception, to the general rule that distinct inventions may not be covered by one grant of a patent, that "patents may be united if two or more, included in one set of letters, relate to a like subject, or are in their nature or operation connected together."    Page 483.    This was emphasized on the second hearing, as reported in 11 How., where the court is at pains to suggest a doubt as to the correctness of the primary rule that two inventions cannot be included in the same patent, however distinct they be; quoting from Mr. Justice Story in Wyeth v. Stone, 1 Story, 273, 288, Fed. Cas. No. 18,107, that, to render separate patents necessary, the inventions must be "wholly independent of each other, and distinct inventions for unconnected objects, as one to spin cotton and another to make paper." .   Mr. Justice Story had before the case of Wyeth v. Stone, supra, enforced the primary rule in Barrett v. Hall, 1 Mason, 447, Fed. Cas. No. 1,047, and in Moody v. Fiske, 2 Mason, 112, Fed. Cas. No. 9,745; but he carefully explained and qualified the rule of those cases in Wyeth v. Stone, which qualification was approved by the supreme court, after he left that bench, in Hogg v. Emerson, supra.    I have carefully examined these cases, and must say that that we have in hand is very much like that of Barrett v. Hall, supra, where the rule of two patents seems to have been favored; but it is none the less like Wyeth v. Stone, supra, and evidently the great judge, whose authority is almost absolute in the later case, desired to get away from the ruling of the former case.    He says pertinently that "it is impossible to use any general language in cases of this sort, standing almost upon the metaphysics of the law, without some danger of its being found susceptible of an interpretation beyond that which was in the mind of the court." Taking the two cases together, approved as they have been by the supreme court, and they establish that where the thing patented embraces various and distinct improvements or inventions having no common connection with each other, nor any common purpose, the party must take out separate patents.    If the patentee has invented certain machines, which are capable of a distinct operation, and has also invented a combination of these machines to produce a connected result, the same patent cannot at once be for the combination and each of the improved machines; for the inventions are as distinct as if the subjects were entirely different.    And, if the patent could be construed as a patent for each of the machines severally as well as for the combination, then it would be void, because two separate inventions cannot be patented in one patent.    But if the patent be a patent for each machine, as a distinct and independent invention, but for the same common purpose and auxiliary to the same common end, no

just objection can be made to it if covered by one patent. "Here," says the opinion from which I am abstracting these rules and their distinctions, "there are two machines, each of which is or may be justly auxiliary to produce the same general result, and each is applied to the same common purpose. Why, then, may not each be deemed a part or improvement of the same invention?" If there be two different machines, distinct from each other, each of which would accomplish the same end, each equally useful and equally new, but one preferable, it may be, to the other, they may go under one patent. And, a fortiori, this rule would seem to be applicable where each of the machines is but an invention conducing to the accomplishment of one and the same general end. But if we take the case in another view, and consider the patent as a patent not for each machine separately, but for them conjointly, or in the aggregate, as conducing to the same common end, if each machine is new they may both be united in one patent. If they may be so united, and were both new, then it is not necessary that there should be a violation of the patent throughout. It is sufficient if any one of the invented machines or improvements is wrongfully used. 30 Fed. Cas. p. 729 (No. 18,107).

I dwell upon these cases because they represent the law of the supreme court on this important point, as it was declared more than 50 years ago, and seemingly has scarcely been touched upon since by that tribunal, certainly not departed from or modified, so far as I can discover from the cases, subsequently. But, incidentally noticing the point, I should say, from this reading of them, that, to make a patent invalid because of duplicity or double invention, the two things patented should be not only independent in form or substance, physically and structurally, but likewise independent in objective results,—one to spin cotton and another to make paper, as these opinions illustrate the matter. There must be a total disconnection between the two, subjectively and objectively, if it may be so expressed.

Finding illustrations in the inventions involved in these cases, that of Barrett v. Hall, Fed. Cas. No. 1,047, was a new and useful improvement for dyeing and finishing all kinds of silken goods,—one a reel on which to spirally wind and secure the silk and put it into the dye; the other a frame for the purpose of extending and finishing the silk after it is dyed. The suit was for the infringement by the use of the reel only. The disunion of the two in form and purpose was relied on as a ground of granting a new trial. That of the Wyeth Case, Fed. Cas. No. 18,107, was for a new and useful improvement in the manner of cutting ice, together with the machinery and apparatus therefor. To effect the purpose of cutting ice, there were both a cutter and a saw. The saw had been abandoned by the patentee as unnecessary or superfluous, and only the cutter was used by the infringer. The patent was held not to be invalid, because double, and to have been infringed by the use of the cutter alone. The patent in Hogg v. Emerson, supra, was thought by counsel and the dissenting judges to cover three distinct "things patented." It was for "certain improvements in the steam engine, and in the mode of propelling therewith either vessels on the water or carriages on the land." Mr. Justice Catron in his dissenting opinion describes the three things patented as—First,

"a piston and shaft which turn a wheel without employing a crank"; second, "a paddle to a wheel propelling machinery or a vessel of any kind in the water"; and, third, "in applying the power of the shaft to turning a capstan by means of a cog wheel." He thought the paddle wheel not covered by the patent, but, if so, the patent was invalid because it comprehended three distinct inventions, disconnected from each other. Three other judges agreed with him in the dissent. But the court, speaking through Mr. Justice Woodbury, held that they were "connected in their design and operation. They all relate to the propelling of carriages and vessels by steam, and only differ, as they must, on water from what they are on land; a paddle wheel being necessary on the former, and not on the latter, and one being used on the former which is likewise claimed to be an improved one. All are a part of one combination used on the water, and differing only as the parts must when used to propel in a different element." 11 How. 605. The common object is found in an improvement for propulsion by steam.

In Evans v. Eaton, 3 Wheat. 454, 506, Mr. Chief Justice Marshall, speaking of a patent for a new and useful improvement in the art of manufacturing flour by means of several machines, consisting of an improved elevator, an improved conveyor, an improved hopper boy, an improved drill, and an improved kiln drier, construes the instrument as a grant of the general result of the whole machinery and of the improvement in each machine. He suggests the doubt, which is the foundation of the doctrine of this primary rule on this subject, whether, under the general patent law, improvements on different machines could regularly be comprehended in the same patent, so as to give a right to the exclusive use of the several machines separately as well as the exclusive use of those machines in combination. This doubt was saved to the patentee by a special act of congress sufficiently broad to remove the difficulty, but the doubt evidently controlled Mr. Justice Story in Barrett v. Hall, supra, and Moody v. Fiske, supra, and led him into making a much broader declaration than he was willing to adhere to when he came to reconsider the subject in Wyeth v. Stone, supra.

In Bennett v. Fowler, 8 Wall. 445, the question is presented in a somewhat reversed form. There were two reissued patents for improvements in hay elevators which had originally been embraced in one patent only. This was objected to by the infringer, but the report is so meager that the scope of the objection does not clearly appear. The court sustained the reissue in the form of two patents, upon the ground that although the improvements might have been put in one patent, as originally, the reissue in two patents was largely in the discretion of the patent office, it being "often a nice and perplexing question." Both patents related to the lifting and depositing hay in a mow of a barn, or in a rick or shed, but the lifter in one was somewhat differently constructed, for the special purpose of stacking the hay. Here it may be remarked, since the earliest cases refer to the revenues of the patent office as affecting this question, and properly affecting it, as congress may have intended to increase the revenues by requiring single patents for separate inventions, that naturally the patent office, in the exercise of the discretion referred to by Mr.

Justice Nelson in the last-cited case, would separate the patents in order to increase the revenues where there was doubt about it, if not for other reasons of wise administration; so that, if the patent office joins them in one patent, it is all the more proper to allow the action of that office to control, where the question may be nice and perplexing or doubtful.

In Gill v. Wells, 22 Wall. 1, 24, there was a controversy about a reissued patent which was a departure from the original invention, but I do not see that the case has much, if any, bearing on the question we have here.

In Bates v. Coe, 98 U. S. 31, 48, there was again a controversy over a reissued patent, which was held to be for the same invention, and that the defenses must be addressed to the invention or thing patented, and not to one or more of the claims; and in so holding the same justice who gave the opinion in Gill v. Wells, supra, cites that case to the proposition that "more than one patent may be included in one suit, and more than one invention may be secured in the same patent; in which cases the several defenses may be made to each patent in the suit, and to each invention included in the bill of complaint." Judge Dyer, in Sessions v. Romadka, 21 Fed. 124, 131, thinks this remark has reference to different inventions in one machine or combination. Whatever its force, it is cited here to show that it is pertinent against the idea of multifariousness either in this patent or in this bill. If the enunciation, whether dictum or not, be true as a matter of law, it has application here adverse to the defense of multifariousness.

In the case of Maxheimer v. Meyer, 9 Fed. 460, 20 Blatchf. 17, it was held that the joinder of separate inventions for the accomplishment of a single result in the same patent does not thereby invalidate it. Judge Wheeler had before him one suit for an infringement of two patents for improvements in bird cages. In the second was also a claim for a feed cup attached to the vertical wires, and it was contended that this invention was independent of the other, and that the patent for both was void. "But," said the judge, "these inventions are connected together by being appropriate for use in the same cage for the common purpose of making a bird cage, and, under these circumstances, the joinder of both in one patent does not render the patent void." He cites Hogg v. Emerson, supra.

In Graham v. Johnston, sub nom. The Fire-Extinguisher Case, 21 Fed. 40, Judge Morris had the question before him. It was again, like Evans v. Eaton, supra, a case of a special act of congress, which might have saved the point; and also the court thought that the first claim in a single invention comprehended all the rest. Yet, on the authority of Hogg v. Emerson, supra, it was held that the discovery of a method of extinguishing fires by carbonic acid gas and water escaping from pressure, and projected by its own expansive force, might be united with a claim of invention for a portable apparatus for applying it, and also of a stationary apparatus for applying it, all in the same patent, because "they relate to a like subject, or are in their nature or operations connected together."

In Sessions v. Romadka, 21 Fed. 124, Judge Dyer gave his attention to the foregoing cases, and held, or was inclined to hold, that a pat-

ent for an improvement in trunks, now in almost universal use, which provides a spring fastener as a substitute for the old-fashioned strap and buckle, was void because it contained several devices, although they were designed to be applied to a trunk, and related to an improvement in trunks. He said each was "a distinct invention or improvement by itself, and the operation of one has no relation to the operation of the others. Although all may be placed upon the same trunk, each singly has a distinct and appropriate use, and in such use they are unconnected." The invention described (1) a yielding roller of wood construction; (2) spring catches to hold the trunk shut; (3) a brace of peculiar construction for the purpose of holding up the top or lid; and (4) a spring arm or lid for supporting the tray when turned up. The court required the patentee, to save his patent, to enter a disclaimer, under Rev. St. § 4917, of all these contrivances except the spring latch, which had been infringed by the defendant. Subsequently the master reported large damages on the theory adopted by him, which the court set aside, and allowed only nominal damages, on the theory of the proof as relating to the damages adopted by the court, though the reason for it does not clearly appear. Possibly it was connected with the question in the case of the bankruptcy of the assignor of the patent to the plaintiff. However, the case was appealed and reversed on this question of damages, the master being sustained in his allowance. But the supreme court does not either affirm or deny the ruling of the circuit court on the point we have in hand. Mr. Justice Brown refers to it, but evidently is careful not to agree with the circuit court on the point, if he is careful also not to disagree, holding, as he did, that the effect of the disclaimer was all-sufficient to cure the defect and save the patent; thereby affirming Judge Dyer on this point in the circuit court. His language is somewhat significant, both in the use of a new word in stating the rule and in treating Judge Dyer's opinion as not being a ruling against the patent for doubleness or multifariousness. He says:

"Upon the hearing in the court below, it was claimed the patent was invalid by reason of the joinder of distinct inventions in the same patent,— inventions which, though applicable to the same article, viz. a trunk, do not *co-operate* in the use of such article. The court below was evidently inclined to this opinion, but permitted the plaintiff to enter a disclaimer of all the claims but the one in suit." Sessions v. Romadka, 145 U. S. 29, 40, 12 Sup. Ct. 799.

This word "co-operate" seems to me an appropriate and happy description of the exception to the general rule that separate inventions require separate grants or patents. It is defined:

"To act or operate jointly with another or others; to concur in action, effort, or effect.

" 'Bring all your lutes and harps of heaven and earth,
Whate'er co-operates to the common mirth.' "

—Webst. Dict.

There are other cases, more or less directly bearing upon this somewhat obscure and difficult question of patent law, but they need not be cited here, and will be found in the cases of their annotations already cited here. They all marshal themselves, possibly according to the fancy of the particular court, under either Barrett v. Hall, su-

pra, or Wyeth v. Stone, supra. I think this case falls properly in line with the latter case and Hogg v. Emerson, supra. Interpreted by the specifications, the common end, to the attainment of which all parts of the patent No. 429,828, for the holder for shoe-button fasteners, co-operates, is feeding them to the machine which fastens the buttons to the shoes most conveniently, expeditiously, and effectively.

The proof shows that the plaintiff is also the owner of such a patented machine. Formerly the button fasteners of patent No. 266,941, consisting of a wire or metal pin with a flat head working through a countersunk washer with inturned edge, were supplied to manufacturers and dealers in bulk, packed in boxes, so that each pin had to be passed through its washer, and fed to the machine in a hopper or otherwise, as most convenient. Now, by this patent, they are packed on the tubular pasteboard holder, with each pin separated, and already passed through its washer, and so interlapped and arranged, somewhat like grains of corn on the cob, that they are fed to the machine rapidly and conveniently, as described in the patent, by holding the tubular package of fasteners to the fastening machine, where they are shelled off, each pin as needed, very much like grains of corn might be pinched from the cob as each grain might be needed for a separate use.

The first, second, third, and fourth claims relate to the reel described, and not involved in this suit, whereon the pasteboard roller or tube is placed for packing upon it, through its perforations, the combined pins and washers, each in its place, ready to fasten to the leather of the shoe. The fifth claim, which the defendant infringes, is for "the button fastener package, comprising an elongated tube, having perforations arranged in rows lengthwise the tube, and the button fasteners inserted in said perforations, with their points within the tube and their heads overlapping, substantially as set forth." Commencing with line 14, the specifications describe "the object being to produce a saving in labor, and reduce the expenses attending the packing and transportation of shoe fasteners, and by so doing giving them a convenient arrangement, so that they may be quickly removed from the holder, and fed to the machine in the same order that they are taken from the holder." Again: "The rollers are filled in large quantities, and shipped to the market, serving not only as a means for holding and carrying the goods, but also, by being arranged as described, they may be removed, a row at a time, into the feed tube 10 of the machine;" that is, the feed tube of the plaintiff's button-fastening machine, or it might be any other button-fastening machine adapted to the purpose of using the fasteners.

If the sole purpose were to hold and carry the goods for transportation and convenient handling in the market for any appropriate use whatever, say for tacking carpets or the like, the claims for the construction of the reel and the adjustment thereto of the perforated pasteboard tube or cylinder, upon which to pack the pins and washers, would so connect themselves with the claim for the product of the packed holder that each would co-operate with the other in that common use, although the case then would be very like the reel and frame of Barrett v. Hall, supra. But when it is considered that the pins and washers are designed for a special purpose, namely, fastening but-

tons to shoes; that there is a machine contrived to apply them to that purpose; and that the reel and pasteboard cylinder are designed to arrange and pack the pins and washers so that they may be conveniently and inexpensively fed to the machine, and be fastened to the shoes,—there can be no doubt, it would seem, that the case falls within Wyeth v. Stone, supra, and Hogg v. Emerson, supra.    Indeed, it might well be argued that the inventions of the fasteners (pins and washers), the machine for attaching them to the buttons of the shoes, the reel and cylinder for packing them, and the packed roller itself, might all have been included in one patent, they do so thoroughly all co-operate to the general or common end of fastening the buttons to the shoes in a particularly useful and desirable form or manner for the uses of the buttons when worn on the shoe.    Possibly such a patent might fall under the ban of Mr. Chief Justice Marshall's doubt in Evans v. Eaton, supra, about the improvements for grinding flour or that of Mr. District Judge Dyer in Sessions v. Romadka, supra, about the contrivances for fastening trunks; but, however that might be, the case, as we have it, is like that where the invention cuts ice in Wyeth v. Stone, or propels wheels and capstans on land or sea in Hogg v. Emerson, or makes a completed bird cage in Maxheimer v. Meyer, supra.    Here, the fasteners are, by the co-operation of the two things patented, fed to the fastening machine, which is a common object enough to save the patent from the objection that it is double in form and for separate inventions.

## Multifariousness in Patent Cases.

The objection that the bill is multifarious was overruled on demurrer, and the ruling should be adhered to now.    It would seem that where one, by a single act, infringed two patents, the bill might join the remedy for a violation of the patent right under each patent.    Indeed, if one owned two patents, one "to spin cotton" and another "to make paper," to use Mr. Justice Story's illustration above referred to, and another violated both patents by infringement of each, there would seem to be no good reason why a bill in equity might not cover both infringements.    But surely where, by selling these button fasteners, packed in a particular form, for a particular use, in a fastening machine, the sale and use violate a patent for the fasteners themselves, and also another patent covering the form of the package itself, there may be one bill, and there could scarcely be two. If this bill had been confined to the second patent, and after decree another bill should be filed on the first patent, the objection that all damages or causes of action arising out of the same act of the defendant should have been included in the first bill might be fatal (Stark v. Starr, 94 U. S. 477, 485; The Haytian Republic, 154 U. S. 118, 125, 14 Sup. Ct. 992); or, if two bills had been filed, they might have been consolidated, both under the general rules of equity procedure and under Rev. St. § 921.

A bill assailing two patents issued to the same party, and relating to the same subject, is not multifarious.    It is matter of convenience, and generally the objection is confined to cases where parties are improperly joined, and not to mere diversity of causes of action between the same parties.    But there is no such diversity of causes of

action where the patents relate to the same subject.    U. S. v. American Bell Tel. Co., 128 U. S. 315, 351, 352, 9 Sup. Ct. 90; Brown v. Deposit Co., 128 U. S. 403, 410, 9 Sup. Ct. 127; Oliver v. Piatt, 3 How. 333, 411.

In Nellis v. Manufacturing Co., 13 Fed. 451, Mr. Circuit Judge McKennan sustained a bill against this objection, where improvements in hay elevators were covered by one patent and improvements in horse hay forks were covered by subsequent patents, the inventions "being susceptible of connected use in the construction of horse hay forks."    He cites Seymour v. Osborne, 11 Wall. 516, 559, where it is suggested by the court that the objection of multifariousness, when five several patents were joined in the same charge of infringement, would not be good, since the act of congress allowing several patents to be issued for distinct and separate parts of the thing patented.    5 Stat. 192.

In Singer Mfg. Co. v. Springfield Foundry Co., 34 Fed. 393, there was one bill for infringement under three patents, and the objection of multifariousness was overruled, because they all related to the one sewing machine.

In Huber v. Myers Sanitary Depot, 34 Fed. 752, it was ruled that the sole owner of one patent and a licensee under another may join as plaintiffs against a defendant who in one machine infringes both; and in Russell v. Kern, 58 Fed. 382, that, where inventions covered by several patents enter into a compact machine, it is necessary to complain upon all the patents, notwithstanding some have expired.    And again, in Deering v. Harvester Works, 24 Fed. 90, where two bills were filed on separate patents for inventions used in a harvesting machine, a consolidation was ordered, under Rev. St. § 921, and the general equity practice on that subject.

In Union Switch & Signal Co. v. Philadelphia & R. R. Co., 68 Fed. 913, 914, and 69 Fed. 833, after a great struggle over this question, going to the extent of filing a plea, after the demurrer to an amended bill was overruled, denying the conjoint use as a matter of fact, the objection for multifariousness was finally denied, having been at first sustained because the bill did not sufficiently aver the conjoint use. On amendment the demurrer was overruled and adhered to by striking the plea from the files.    There were five patents:  (1) Improvements in circuits and apparatus for electric railway signaling;  (2) improvements in electric railway signaling apparatus;  (3) improvements in electric circuits for railway signaling;  (4) improvements in rail connectors for electric track circuits;  (5) improvements in electric railway signals.    The amended bill alleged that the "conjoint use includes a material and substantial part of the subject-matter of each of the said recited patents in one and the same connected machine, mechanism, or apparatus."    This was held sufficient on demurrer, and the plea denying the fact was stricken out, on the ground that the denial could only be made by answer.    Or, as stated in Lilliendahl v. Detwiller, 18 Fed. 176, the bill must allege, and the proofs must show, either that the inventions are capable of conjoint use, or are so used in fact by the defendant.

It may be well enough, in passing, to note here that the bill in this case alleges that the two inventions in the two patents, one for the

fasteners and the other for their holders, are adapted for and capable of conjoint use in a single structure, and have been so made, used, and sold by the defendants, and have been so embodied and so manufactured and sold in large quantities by the plaintiff. This is denied by the answer, and thus the issue is made.

The foregoing cases may justify this practice in the evolution of equity procedure as applied to patent cases, but there is authority for the contention of the plaintiff that the objection of multifariousness must be taken by demurrer, and cannot be taken on final hearing (Story, Eq. Pl. § 271, note); and that multifariousness is matter of abatement, to be taken by demurrer if apparent on the face of the bill; if not, then only by a plea (Id. §§ 735, 747; Fost. Fed. Prac. § 125; Eq. Rule 39, which forbids setting up in the answer matters of abatement). There is an intimation, however, in Oliver v. Piatt, 3 How. 333, 412, that it may be done by plea or answer.

There is a case in our own circuit of Gamewell Fire-Alarm Co. v. City of Chillicothe, 7 Fed. 351, before Baxter and Swing, JJ., where the demurrer was overruled. There were three reissues of patents for improvements in fire alarms and the transmission of municipal intelligence, but the bill alleged conjoint use in one apparatus or machine, and it was held "to constitute one and the same cause of action." And the court gives the test as being the burden imposed on the defendant.

In another case (Manufacturing Co. v. Marqua, 15 Fed. 400, before Baxter, J.) the bill did not aver that the invention was capable of conjoint use, or that defendant had so used it in fact, and the court was inclined to sustain the demurrer, but dismissed the bill on another and fatal ground.

In Barney v. Peck, 16 Fed. 413, the demurrer was sustained because the conjoint use was not averred in the bill, either as to capability or the fact of such use by defendant; and for the same reason of defective bill the demurrer was sustained in Lilliendahl v. Detwiller, 18 Fed. 176, where, as in the immediately preceding case, there was an alternative averment that they might be used jointly or separately, which seems a fatal averment, as it is essential there shall be a conjoint use.

Again, in Consolidated Electric Light Co. v. Brush-Swan Electric Light Co., 20 Fed. 502, because it appeared by the allegations of the bill that the inventions might be used separately and independently as well as jointly, a demurrer was sustained, where the bill averred conjoint use of five patents by the defendants.

In Griffith v. Segar, 29 Fed. 707, the demurrer was sustained where the bill alleged infringement of sixteen claims of five patents for improvements in folding beds, there being no averment of conjoint use, or that the structure complained of combined all the patented features.

But the leading case on that side of the conflict of authority is Hayes v. Dayton, 8 Fed. 702, before Blatchford, J., where the demurrer was sustained to a bill which alleged infringement of thirty-eight claims in six patents relating to skylights, ventilators, skylight turrets, conservatories, and other glazed structures. The judge cites and distinguishes many of the cases which apparently show somewhat of a conflict between Blatchford, J., and Nelson, J., on this question. He sustained the demurrer because the bill showed that the patents

were not connected together in every infringing structure or to be used at the same time in any infringing structure.

The leading case on the other side of the conflict is Nourse v. Allen, 4 Blatchf. 376, Fed. Cas. No. 10,367, which involved infringements for reaping machines in four patents intended for any or all machines, but not necessarily connected together in use, and it holds (Nelson, J.) that the defense of multifariousness is not available where it appears that the infringing machine contains all the improvements of the several patents. "A court of chancery," says the opinion, "allows distinct and separate causes of action to be joined against the same party, unless it is apparent that the defense will be seriously embarrassed by confounding different and unconnected issues and proofs in the litigation. Although the defenses may be distinct as to the several improvements, according to the allegations of the bill, so far as making, vending, or using the machine is concerned, the infringement of all the patents is involved, and to this extent they are connected with each other." 18 Fed. Cas. 459.

There is another case by Benedict, J., of Horman Patent Mfg. Co. v. Brooklyn City R. Co., 15 Blatchf. 444, Fed. Cas. No. 6,703, in which car-fare registering machines under two patents were attacked for infringement. The infringing machine contained parts of both patents, and the demurrer was overruled. The court says:

"It may be open to question whether a bill charges a single cause of action when it sets forth the use of devices secured by separate patents, although such use is stated to occur in one and the same machine. But the bill, if it be considered to set forth two causes of action, may, nevertheless, be good, for equity permits the joinder of several causes of action in a single bill. Such joinder is not, however, permitted when the effect will be to embarrass the defendant or introduce unnecessary confusion into the cause. Whether that will be the effect in any particular case must depend, in a great measure, upon the nature of the controversy, and no general rule has been laid down by which the cases may be determined."

He cites the older cases quite liberally. See, also, Walk. Pat. § 417; Rob. Pat. § 1018.

The result of this reading of the cases is that the defense of multifariousness is not favored, but is strictly limited by the courts, and by none more strictly than the supreme court of the United States, which applied the strict rule to a patent litigation in the American Bell Telephone Case, supra. And, while some courts have somewhat enlarged the indulgence of the defense in patent cases, for the reason, perhaps, that our patent system requires separate patents for separate inventions not co-operating to the same end, and for another reason, that patent defenses are so expensive, patent litigation is not free from the general equity rules on this subject, and is governed by the same principles as other equity procedure. The rule of judgment which determines whether or not given inventions may be joined in one patent, because co-operating to a common end, though very analogous, is not the same as the rule of judgment which determines whether or not there is such a conjoint use of two inventions covered by separate patents as permits them to be joined in one bill in equity to protect them against the infringement, and confusion will be avoided by attention to this distinction.

The real question of unity in the equity pleading of patent cases depends on two considerations:    First. Under the general law of multifariousness, may the two infringements be joined against the same defendant, no matter how widely the patents may be separated, because, to use the above-quoted language of Judge Benedict, to join the several causes of action will not embarrass or confuse the defense unfairly or unjustly?  If so, they seemingly may be joined as in other bills in equity under like circumstances, and any distinction in patent cases would be merely arbitrary.    Secondly. Do the two or more patents so enter into the infringement that it becomes one cause of action in fact?  If so, they must be united in one bill.

Causes of action arising out of patent infringements are peculiar in respect of this, and, in applying the above tests, present more perplexities than other cases, perhaps, but this is all that can be said of it, for, as Judge Benedict remarks, there is not any general rule by which the cases may be determined.    The fact that there are two or more patents or two or more inventions involved in the controversy does not furnish such a rule, though superficially it may seem so.    Nor does the fact that all the inventions are used by the same infringer at the same time, or in one machine, structure, apparatus, system, or what not, furnish such a rule, though again, superficially, it may seem so.    Whether the infringements are completed by the manufacturer's vending or use of one compact machine, or one structure, or one apparatus, or the like, or are more widely separated, and only find a unity in a more enlarged or extensive system of appliances, whose particular uses can be more distinctly seen as divisible in operation, may render the solution of the question whether there shall be more than one bill in equity more difficult of solution, but none of these conditions indicate a general rule by which the question is to be determined.    It is here that is found the scope for the exercise of that discretion of the court mentioned by Lord Cottenham in Campbell v. Mackay, 1 Mylne & C. 603, and by Mr. Justice Story in Oliver v. Piatt, 3 How. 333, 411, 412, in determining each case according to its own circumstances.

In this case we have neither a machine nor apparatus, and only in a very technical sense a structure, if it may be called so, when the fasteners are packed into their "holders"; but we have an article of merchandise dependent for its value very largely, if not entirely, on its patented peculiarities, and certainly, for the special use for which it was designed, having a more especial value as an article of merchandise.    Not a mass of pins or tacks and washers, to be sold for any general use to which pins or tacks and washers may be put by the public, but a mass of especially constructed pins or tacks, and especially constructed washers, put up for sale in an especially designed form of package, having its own especial use in such form for those especial tacks and washers; in which sense the things sold combine themselves into a unit of merchantable product; the elements of value dependent upon the plaintiff's inventions covered by two or more patents or parts of patents.

The bill charges, and the proof shows, that the defendants make, sell, and use, and cause to be made, sold, and used, this product of the

89 F.—63

plaintiff's inventions, and that every act of making, selling, and using comprehends in itself each of the inventions set up in the bill. There is the least possible embarrassment, if there be any at all, in defending the case as one case. Indeed, there is shown in neither pleadings nor proof any element of embarrassment. Hence, whatever discretion the court has, on the particular circumstances of this case, should determine in favor of one bill, and not two, and, if there were two, they, on the same circumstances shown here, should be consolidated by the positive command of the statute. Rev. St. § 921. And the defense of multifariousness in the bill should fail, whether on demurrer or at the final hearing, on the issue made by the answer and proofs.

### Validity of the Patents.

The defense made, that the patents involved lack invention, is equally unavailing, in my judgment. The mere simplicity of the thing patented is never conclusive of the want of invention. The pins or tacks and washers of patent No. 266,941 seem simple enough and altogether familiar. If used to tack carpets, or other such common uses, perhaps even in their peculiar form as tacks and washers, they would not be patentable, though I am not sure of that. But this peculiar form was not designed for such uses, but "for securing buttons on shoes and other similar articles," and "consists of the combination of elements hereinafter described and claimed." The only claim is:

"The button fastener herein described, consisting of the pin, C, provided with the flat head, a, and having a looped point adapted to be secured to the eye of the button, in combination with a metallic countersunk washer, D, all constructed and arranged substantially as and for the purpose described."

The pin with a flat head, being passed through the countersunk metallic washer, which has its edge inturned on the bottom side, next the leather, is bent into a hook or loop, the sharp point being fastened or pressed into the leather after passing through the eye of the button. The advantages shown by the proof are, as stated in the specifications, that the button is securely affixed to the leather of the shoe, so that when twisted or turned there is a swivel action on a metal surface, which with its inturned edges distributes all pressure over a larger area of the fabric, and prevents that tearing of the fabric and pulling out that would come of a mere tack or pin, whether with or without a plain or common washer operating with resistance concentrated at the hole through the fabric. The countersunk washer and flat head adjust themselves to the leather, so that the roughness of the surface after the buttons are set on is reduced to a minimum, and does not hurt the foot in wearing the shoe. This fastening is done with a machine adapted to the purpose. The specifications are rather meager, and the claim is very brief in its descriptions of the invention, but, taken with the drawings, all that is here set forth appears on the face of the patent, and is made satisfactorily plain by the testimony of the experts.

Undoubtedly pins with sharp points, used with washers or plates of one kind and another, metallic as well, to fasten things together or to hook or loop buttons upon fabrics, are old enough, to be sure; but when applied to this use especially, as described in this patent, there seems, to my judgment, to be invention, nevertheless, when the matter is considered in the light of the adjudications of the patent law to be presently cited. The patentee on this subject says in his specifications:

"I am aware that it is not new to pass a headed pin or tack through the material, and engage the point with the eye of a button; but such a fastener is objectionable, as, when the button is twisted or turned, the solid head of the fastener engages with the soft surfaces of the leather or other material, and the result is the button is soon twisted off. My invention overcomes this difficulty," etc.

The defendants have taken no proof, either of experts or others; but have filed a mass of prior patents, which it is claimed show anticipation or prior use, numbering 19, I believe, in the answer, and 13 in the proof. It is enough to say that, in the absence of proof and any very serious argument as to the most of these patents, they seem quite irrelevant, but as to all of them I am unable to see any evidence of prior use or anticipation. Perhaps I should give the numbers here for full understanding of the ruling which I make. They are patents numbered 54,022, 99,724, 136,556, 140,008, 188,206, 198,323, 211,702, 253,096, 249,298, 258,853, 261,058, 266,528, 266,883. These are all that are in proof, though others are mentioned in the answer.

The same defense of prior use and anticipation is made to the claim under patent No. 429,828, for the "holder" of the shoe-button fasteners. That claim has already been quoted in the previous part of this opinion, and the invention sufficiently described to understand that what has just been said about this defense in relation to the other patent is equally applicable to this. There are three patents men-

tioned in the answer, and two filed in the proof, No. 344,220 and No. 367,016, as evidence of prior use and publication, but they are irrelevant.

There is an old use of pasteboard carriers, cylindrical in form, as well as other forms, with perforated rows, to receive tacks, nails, bolts, pins, buttons, hooks and eyes, medals, coins, plates, jewelry, and almost every kind of such articles or merchandise, for convenience of transportation, by mail or otherwise, and, if it were only the convenience of transportation generally that were involved in this suit, I should say there was no invention whatever. But, as fully explained heretofore, that is only a very superficial view of this patent, and the convenience of carriage or transportation is relatively quite an unimportant use for the holder. The quotations already made from the specifications show that these fasteners are so packed and arranged on the holders "that they may be removed, a row at a time, into the feed tube" of the plaintiff's machine, for setting the plaintiff's button fasteners on the shoes by manufacturers and dealers using them. It is this supply to the market for that purpose and that convenience which tempts the defendants to infringe the method of packing the pirated fasteners which they sell to the trade. Mere ordinary transportation is not so much the pirated use as the extraordinary transportation to the feeding tube of the fastening machines.

Taking a single element of a combination, with intent to bring about its use in the patented combination, is infringement, either direct or contributing, according to circumstances. Rob. Pat. 824; Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co., 25 C. C. A. 267, 77 Fed. 288; Thomson-Houston Electric Co. v. Ohio Brass Co., 26 C. C. A. 107, 80 Fed. 712. This infringer takes the simple pins and washers, constructed according to the plaintiff's specifications in patent No. 266,941, packs them on pasteboard tubes, evasively split in halves, according to the specifications of plaintiff's patent No. 429,828, and, without turning the fasteners into loops to fasten buttons on shoes to complete the infringement, sells to manufacturers and dealers, who do complete it by doing that thing, and they are sold with that intention and for that purpose. They are equally infringers with those who set the buttons on by the use of the plaintiff's fasteners without license, and which have without license been sold to them by the defendant for that purpose.

A patent is of itself prima facie evidence of its validity, and the defendant must show by proof that the patent office has erred in its judgment on that score, and the proof must be conclusively against any fair doubt on the point. Kinnear & Gager Co. v. Capital Sheet-Metal Co., 81 Fed. 491, 492; Cantrell v. Wallick, 117 U. S. 689, 695, 6 Sup. Ct. 970; The Barbed-Wire Patent, 143 U. S. 275, 285, 12 Sup. Ct. 443, 450; Coffin v. Ogden, 18 Wall. 120, 124; Western Electric Co. v. Home Tel. Co., 85 Fed. 649, 658.

The fact that pins with flat heads and sharp points, thrust through a washer with countersunk disk and inturned edges, and used by looping the pin through the eye of a button to fasten it to its fabric, or that pasteboard cylinders perforated with holes to receive the pins and washers into a package were each well known separately as me-

chanical elements, is apt to mislead one's judgment by their familiarity as such; but it is well settled that such simple elements may be so combined into a new use that invention takes place, and there is validity in the patented combination, producing new results,—always, if it be not a mere aggregation of the separate elements. The law upon this subject as held by the supreme court is as stated by Mr. Justice White, by pertinent quotation from the cases in a litigation where the validity of the patent was denied. Palmer v. Village of Corning, 156 U. S. 342, 344, 15 Sup. Ct. 381; Tobacco Co v. Streat, 28 C. C. A. 18, 83 Fed. 700. Mr. Justice White quotes from Pickering v. McCullough, 104 U. S. 310, 318, the rule by which the patentability must be tested, and illustrates from another branch of the law by saying, to be good, the known elements in the combination must be joint tenants of the domain of invention, seised each of every part, per my et per tout, and not mere tenants in common, with separate interests and estates. In my judgment, each of the old elements, in either of these patents, construed with reference to the especial uses for which they were combined, are joint tenants, and not tenants in common, and "produce a result due to the joint and co-operating action of all the elements." Palmer v. Village of Corning, 156 U. S. 345, 15 Sup. Ct. 382; Pickering v. McCullough, 104 U. S. 318; Loom Co. v. Higgins, 105 U. S. 580, 589. In this last case Mr. Justice Bradley well states the considerations that govern when the device seems simple,—so simple that all might have seen it. Pages 589–592.

In determining this question, the fact that the article produced supersedes all other appliances, or that a useful and commercially successful result has been attained, or that the value of the thing patented has been recognized by the public in extensive use, has a controlling, if not a conclusive, effect; and it should have, upon obvious principles of justice to one who sees that which he suggests constantly appropriated and used by others. Such is the proof in this case.

Overruling the defense of anticipating devices and prior use, Mr. Justice Brown says, in Sessions v. Romadka, 145 U. S. 44, 12 Sup. Ct. 802, that, "if there were any doubt of this in view of the fact that Taylor seems to have been the first to invent a practical trunk fastener, and that it has completely taken the place of the earlier devices, we should be inclined to resolve this doubt in favor of the patentee." And so are all the cases: Rob. Pat. 1022; Smith v. Vulcanite Co., 93 U. S. 486, 495; Krementz v. S. Cottle Co., 148 U. S. 556, 560, 13 Sup. Ct. 719, citing Consolidated Brake-Shoe Co. v. Detroit Steel & Spring Co., 47 Fed. 894; Topliff v. Topliff, 145 U. S. 156, 164, 12 Sup. Ct. 825; Consolidated Safety-Valve Co. v. Corsby Steam-Guage & Valve Co., 113 U. S. 157, 179, 5 Sup. Ct. 513; Magowan v. Packing Co., 141 U. S. 332, 343, 12 Sup. Ct. 71; Gandy v. Belting Co., 143 U. S. 587, 595, 12 Sup. Ct. 598; The Barbed-Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450; Consolidated Brake-Shoe Co. v. Detroit Steel & Spring Co., 59 Fed. 902, 908; Robbins v. Manufacturing Co., 71 Fed. 186, 190; Horn v. Bergner, 68 Fed. 428; Binns v. Chemical Co., 70 Fed. 711, 713.

In Muller v. Tool Co., 23 C. C. A. 357, 77 Fed. 621, on the authority of some of these cases, our own circuit court of appeals has ruled that, even where no original result is accomplished and the elements

are old, the patent will be sustained, if increased effectiveness has been produced. Page 629, 77 Fed., and page 365, 23 C. C. A. A mere form of putting up plug tobacco was sustained in Eppinger v. Richey, 14 Blatchf. 307, 312, Fed. Cas. No. 4,505; a form of advertising sack for street-car advertising also, in American Street-Car Advertising Co. v. Newton St. Ry. Co., 82 Fed. 732; and a form of account book, as to its removable margins, in Account Co. v. Wellington, 86 Fed. 146. So, on demurrer, a process of softening paper with a solution of gelatin, and pounding it, when crumpled, to imitate chamois-skin or buck-skin fabrics, was sustained. All these seem very simple in appearance.

Here the swivel (partial) action of the button, after fastening, evidently removes to a great degree the tendency to tear at the hole made in the leather by the eye of the button, or rather its fastener, when inserted; the inturned washer distributes the pressure away from the same perforation, and furnishes a biting surface elsewhere, that still further reduces the tendency to tear out; the countersunk face' of the washer receives the head of the tack, and holds it away from the foot, while at the same time furnishing a metal surface on which to pull and tear, instead of the edges of the perforation; and there are other manifest advantages which are shown by a neat surface and appearance, and perhaps a capability of being removed, etc.

As to the other patent, its form of packing for transportation, convenience of counting for sale, and, more than all, its especial facility for feeding the tube of the fastening machine, furnish the patentable novelty and utility; and both of them, notwithstanding the apparent simplicity of either, come within the ruling of the cases that sustain inventions for increased effectiveness and the production of new results due to the joint co-operation of old elements, and that neither is a mere aggregation of well-known mechanical appliances. Decree for the plaintiff.